BEYER et al., Plaintiffs in Error, v. HERMANN et al.

Division One, March 18, 1903.

1. **Will:** SIGNING WITHOUT READING: KNOWLEDGE OF CONTENTS. The will was prepared and read and explained to the testatrix, but in attempting to sign it she let her pen fall and blotted the paper, so it had to be re-copied, and then she signed it, but whether it was read over to her again or not is not clear from the evidence. *Held,* that this is immaterial, as it is undisputed that the paper she signed is an exact copy of the draft she first attempted to sign, and as she declared to the witness when she signed the paper that it was her will, the requirements of the law that the testatrix must know its contents, are met.

2. ———: INCAPACITY: DELIRIUM: CONFLICTING EVIDENCE. Three witnesses on the part of the contestants gave it as their opinion that testatrix was of unsound mind on the day the will was made, and five doctors and four lay witnesses testified that she was perfectly sane and rational before and until the will was executed, but that about five hours afterwards she began to show signs of delirium as a result of an operation for dropsy performed on her a few days previously. *Held,* that the most favorable view for the contestants that can be taken of the case is there was a conflict of evidence, and this being true and the action being one at law, the case was one for the jury, and this court will not interfere with their finding of fact.

3. ———: KNOWLEDGE OF ATTESTING WITNESSES. It is altogether unnecessary that attesting witnesses to a will should know the contents of the will.

4. ———: ———: INSTRUCTION AFTER RETIREMENT OF JURY. It was not error for the court, on the receipt of a written request from the jury, to instruct them that it was "not necessary to the validity of a will that the will be read to the attesting witnesses or either of them, either before or after they sign the same as such witnesses." Nor was it improper to give such instruction without permitting counsel to reargue that phase or branch of the case, as no new phase was put upon the case by the instruction.

5. ———: WITNESSES AFTER CLOSE OF CASE. After defendants had closed their case, the plaintiffs asked to introduce a witness who had been subpoenaed by defendants but not called, stating that they had just learned the facts she would testify to. These facts were either altogether cumulative or had no tendency to prove any charge in the petition against the validity of the will. *Held*, that the court did not abuse its discretion in refusing to permit such witness to testify.

6. ———: ———: KNOWLEDGE OF WHEREABOUTS OF KINDRED: MATERIALITY. Testimony that testatrix said a short time before her death that she had been trying to find her brothers and sisters, but could not, and that if she knew where they were she would make them her legatees, does not tend to show either incapacity, or undue influence, or that the will was not executed according to law.

Error to St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

AFFIRMED.

*Willis H. Clark* and *John A. Gernez* for plaintiffs in error.

(1) The due execution of the alleged will was not proven. R. S. 1899, sec. 4604. (2) Upon the whole evidence the verdict and judgment are for the wrong parties. R. S. 1899, sec. 4604; Muller v. St. Louis Hospital Ass'n, 5 Mo. App. 390, 73 Mo. 242. (3) The court erred in responding to the communication of the jury and in instructing them upon an immaterial point, and not affording an opportunity for reargument after giving such additional instruction. (4) The court erred in refusing to allow plaintiffs to examine Mrs. Gaetner as a witness in chief, she being subpoenaed for defendants and not called by them, and the character of her testimony being unknown to plaintiffs until their case in chief had been closed. Tierney v. Spiva, 76 Mo. 279; Brown v. Burrus, 8 Mo. 26; Dozier v. Jerman, 30 Mo. 216; Owen v. O'Reilly, 20 Mo. 603.

*W. R. Schery* and *Chas. E. Hannauer,* for defendants in error.

(1)   The will was executed in due form.   There was abundant evidence showing that it was signed in the presence of testatrix and at her request, and attested by two or more competent witnesses in her presence.   R. S. 1899, sec. 4604; Grimm v. Tittman, 113 Mo. 56; Stephens v. Stephens, 129 Mo. 423.   Admitting that the second copy of the will was not read to testatrix, this would not invalidate its execution.   The evidence conclusively proves that she was fully advised of the contents and knew what she was doing when she signed it and declared it (the second copy) to be her last will.   Berberet v. Berberet, 131 Mo. 410.   (2)   The question of will or no will is one for the jury, under proper instructions from the court; and where the law of the case is declared with substantial accuracy, the verdict of the jury will not be disturbed by an appellate court.   Muller v. St. Louis Hospital Ass'n, 5 Mo. App. 397, 73 Mo. 242; Gordon v. Burnes, 153 Mo. 223; Garland v. Smith, 127 Mo. 580; Appleby v. Brock, 76 Mo. 314; Young v. Ridenbaugh, 67 Mo. 589; Harris v. Hayes, 53 Mo. 90.   (3) It was proper for the trial court, under the circumstances of the case, to give the instructions after the argument, and after the case had been submitted to the jury.   Its action was not irregular or erroneous.   Gore v. Gore, 147 Mo. 687; Glenn v. Hunt, 120 Mo. 342; Chouteau v. Jupiter Iron Works, 94 Mo. 403; State v. Miller, 100 Mo. 623; Wilkinson v. Dock Co., 102 Mo. 142; Wilmott v. Railroad, 106 Mo. 547; McPherson v. Railroad, 97 Mo. 260; Dowzelot v. Rawlins, 58 Mo. 79; Cluskey v. St. Louis, 50 Mo. 89; State v. Raven, 115 Mo. 424.   (4) The order of putting in testimony is a matter resting in the sound discretion of the trial court; and unless it is clear that this

discretion has been abused, to the injury of one of the parties, by some unfair discrimination, or otherwise, this court will not interfere. Jackson v. Railroad, 118 Mo. 222; State v. Smith, 80 Mo. 520; Burns v. Whelan, 52 Mo. 520; Christal v. Craig, 80 Mo. 375; Sebert v. Allen, 61 Mo. 487; State v. Porter, 26 Mo. 201; Dozier v. Jerman, 30 Mo. 216; Rucker v. Eddings, 7 Mo. 118.

MARSHALL, J.—This is an action to contest the will of Anna Hermann, *nee* Burger. The testatrix was married to defendant William Hermann on April 9, 1896, and the will was executed on the same day. She died on April 11, 1896. By the will she devised $2,000 to her adopted child, Martha (really the child of her deceased daughter, Augusta Burger), and the remainder of her estate she bequeathed to her husband. The will is contested upon three grounds: first, that decedent was of unsound mind; second, that it was not executed in the manner required by law; third, that it was procured through the undue influence of the defendant, William Hermann. The plaintiffs are the half-brothers of the decedent, and for three or four years before the will was made had not been friendly with the decedent, growing out of differences arising from the settlement of their mother's estate, among which was their charge that she had taken six hundred dollars belonging to their mother, and in consequence they had not seen the decedent for three years before her death, and she did not know where they were, but it seems had advertised for them without success. There was a verdict for the defendants and the plaintiffs appealed. The evidence will be referred to in the course of the opinion in connection with the several points discussed.

## I.

There is no substantial evidence to support the charge of undue influence, and therefore no further attention will be given to that branch of the case.

## II.

The second charge is that the will was not executed according to law.

The plaintiffs claim that the justice prepared a will and read it and explained it to the decedent, and that in attempting to sign her name to it she dropped the pen and blotted the paper, and thereupon the justice recopied the will, and without reading or explaining the copy to her, it was executed, she making her mark and the witnesses signing their names.

The testimony of the justice is not altogether clear as to whether he read the will to the decedent. after he recopied it or not. It is susceptible of the construction that he did, and also that he did not do so. But whether he did or not, it is uncontradicted that the copy was a true copy of the will that was spoiled by being blotted, and that the spoiled will was read and explained to her, and in fact, was drawn as she directed. This being true, she knew the contents of the copy as well as she did of the first draft, and she declared to the witnesses, when she executed the copy, that it was her will. This fills the requirements of the law that she shall know the contents. [Berberet v. Berberet, 131 Mo. 399.] She could not read written English, so she had to depend upon the justice to know the contents of the will. He could impart such knowledge to her either by reading the will or explaining its contents to her. In either case she would only know what he read or what he said about it. She would not know whether he read what was written or what he said he had written. Therefore, she

had to rely upon the integrity of the justice to read or explain correctly what he had written. No one else would know whether he had done so or not. This being true, it can make no difference in law, that the copy was not read to her, for she would still be in the dark as to whether it was a true copy or not, and also whether either was as it was read or explained to be. The first draft was read to her, correctly, so the justice says, and so it must be taken because no one else could know whether it was or not. The copy was a true copy of the first draft whose contents she knew, so the justice says, and so it must be, for no one else could know whether it was or not. The whole matter, therefore, rests upon the integrity of the justice, and there is no more reason for doubting that the copy is a true copy, than there is for doubting that the justice (or any one who writes a will) read or explained it correctly and accurately.

This charge must therefore fail, and the will be regarded as being executed according to law.

## III.

The remaining charge is that the testatrix was of unsound mind.

On the case in chief the defendants proved the execution of the will, and showed by the testimony of the subscribing witnesses, Emma Loesch and George Sommers, the justice of the peace who wrote the will, that the testatrix was of the requisite age, was sane, and knew what she was doing, what property she possessed, what disposition she was making of it, and who were the subjects of her bounty (Sehr v. Lindemann, 153 Mo. l. c. 288) ; that she knew of the plaintiffs, but said she did not intend to leave them anything because she was not on good terms with them; but that she was very solicitous about the child, Martha, and wanted to provide for her.

The plaintiffs then showed by the testatrix's half-sister, Mrs. Lena Schergen, and her husband, George Schergen, that in their opinion the testatrix was of unsound mind on the day the will was made, although she gave Mrs. Schergen, on that same day, a pair of diamond earrings worth $140, which she still had.

The plaintiffs further showed by Anna E. Lattig that she saw the testatrix between seven and eight o'clock in the evening of the day the will was executed (the will was executed between one and two o'clock) and heard her talk to the little girl, Martha, about an operation (for dropsy) that had been performed on her four days previously and what wonderful things another doctor had told her, and that "she looked wild and was very weak" and in her opinion was of unsound mind.

These were all the witnesses called by the plaintiffs who testified on the question of the sanity of the testatrix—the plaintiffs testified to the differences and estrangement between themselves and the testatrix, but said neither had seen her for three or four years before her death.

On the other hand, the defendants showed by the testimony of Doctors George A. Krebs, A. C. Bernays, George Richter, Lawrence Thumser, and Adolph Schlosstein, who were attending her when she died or had been attending her just before her death or had assisted in the operation upon her, that she was of sound mind and not at all irrational. Dr. Bernays said he saw her on April 10th, and she told him she had married the day before, and he joked her about it, and that she was then in her right mind. Dr. Krebs, was her attending physician from April 4th to April 11th, when she died. He saw her every day. He said she was tapped on Sunday, April 5th; that the next day she felt better and was able to sit up, and spoke of her plans for the future, and said she was "feeling

fine;" that on Tuesday she was doing nicely and he thought she would get well; that Tuesday night her temperature rose, a slight erysipelas developed and she complained of pain; that Wednesday morning she was better, and that evening "everything seemed pretty fair;" that Thursday, the 9th, the day the will was executed, she was doing well, but that evening she was a little delirious; that the first delirium he noticed was on the night of April 9th-10th; that Friday morning she was better, and in the afternoon she seemed well, but he did not like her condition, because her answers were given "in a slow, shiftless way, which gave indications that she was not mentally healthy;" that "Friday night the symptoms had become aggravated, she was delirious and suffered pain. She continued this way until Saturday night, when she died." He further testified that on April 9th, the day the will was executed, "her mind was in good condition at least until evening; the temperature came up about six o'clock."

The defendants further showed by Henry Hermann, the father of the defendant William Hermann, that he had known the testatrix since 1892; that he saw her at her home on April 9th, about half past eight in the morning; that she asked him if he had any objection to her marrying his son, to which he replied in the negative; that at her request he went, with his son, and got the license, and brought the justice of the peace; that the justice asked her if she wanted to be married, and she said she did, and that she also wanted to make her will; that she was very solicitous about the child, Martha, and after the marriage and the execution of the will, she said "she was satisfied everything would be all right," and that she was as "sound of mind as any man in this room" (meaning the persons in the courtroom). He also said he had known for a long time that his son was engaged to be married to the testatrix. The defendants also showed by the testimony of Mrs. Francis Neunahor, the defendant

Hermann's sister, and of Mrs. Sophie Hermann, his mother, and of Mrs. Louisa Niehaus (formerly Loesch), the other subscribing witness to the will, that the testatrix was of sound mind when the will was executed. Mrs. Sophie Hermann said that after the marriage the testatrix told the child, Martha, not to call the defendant Hermann "Uncle Willie" any more, but to call him "Papa," and to be good and obey him.

The plaintiffs then showed by the testimony of George Schergen, Anna Littig, and the plaintiff Fred Beyer, that Mrs. Sophie Hermann told them on the night of April 9th, that the testatrix "had been out of her head all day." This Mrs. Hermann denied.

This was the case made. On the part of the plaintiffs three witnesses, Mr. and Mrs. Schergen and Mrs. Anna Littig gave it as their opinion that the testatrix was of unsound mind. On the part of the defendants, five doctors testified that she was perfectly sane and rational before and until after the will was executed, and four lay witnesses testified to the same effect. The great preponderance of the testimony, therefore, is, that she was of sound mind. But this is an action at law, and the most favorable view for the plaintiffs that can be taken of the case, is that the evidence is conflicting. This being true the case was one for the jury. The jury found for the defendants. In such cases this court will not interfere with the finding of fact by the jury. [Gordon v. Burris, 153 Mo. l. c. 230.]

## IV.

After the case had been submitted, the jury sent the following written communication to the court:

"*To the Hon. Judge Circuit Court, No. 3:* We, the jurors in the case of Beyer v. Hermann, find that it will be utterly impossible for us to reach a verdict without instructions as to whether it is necessary to have will read to witnesses before attesting same."

To which the court replied as follows:

"Gentlemen of the Jury: In answer to your communication hereto attached, the court instructs you as follows:

"That it is not essential to the validity of a will that the will be read to the attesting witnesses or either of them, either before or after they sign the same as such witnesses."

This is assigned as error. It is not pretended that the law was incorrectly declared to the jury, nor could it be successfully so contended, for it is unusual and altogether unnecessary that attesting witnesses to a will should know the contents of the will. Nor is any injury to the plaintiffs pointed out. In fact, the burden of the complaint is that the point was "immaterial," "collateral" and was a "trivial matter of evidence." But it is claimed that by so instructing the jury, without affording counsel an opportunity to reargue the case, the decision of the case was made to turn upon a "trivial matter of evidence."

The right and, under proper circumstances, the duty of the trial court to further instruct a jury, after the case has been argued and submitted, has been so recently and clearly decided, in Yore v. Transfer Co., 147 Mo. l. c. 686, that it is only necessary to refer to what is there said.

Of course, if the further instruction puts a new or different phase on the case, counsel should be allowed to reargue the case as to that phase or branch of it. But in this case there was absolutely nothing for counsel to argue under the further instruction. They could not discuss the correctness of the law declared, and under that instruction it was wholly immaterial whether it was or was not a fact that the will was read over to the witnesses, and therefore, there was no question of fact that could be argued, and in short, nothing whatever that was open to argument before the jury, and no fact to be found by the jury under

that instruction. There was, therefore, no error committed by the court in this regard.

## V.

On surrebuttal the plaintiffs called Mrs. Margaret Gaetner as a witness, explaining to the court that she had been subpoenaed but not used by the defendants, and that they had just learned that she would testify to matters favorable to the plaintiffs, and asked leave to introduce her as a witness in chief on their behalf. The court refused to reopen the case and confined the testimony of the witness to matters in rebuttal. The plaintiffs then asked the witness whether she had ever talked with the testatrix about her brothers. The court sustained an objection to the question, and the plaintiffs excepted. In their motion for a new trial this is assigned as error, and the affidavit of Mrs. Gaetner is filed showing that about eight days before her death the witness talked to the testatrix about her brothers, and she said they had not been notified of her illness, and she did not know where they were, but had been trying to find them, and had advertised for them, but without success, and ''if they did not come it might be against their own interest, that if she could hear from them she would make her will and leave her property to them, but if they did not come she did not know what to do; that she visited the testatrix on April 9th, and was with her from 6:30 to 10 p. m., and found her very weak and ill and 'out of her head,' and that she did not recognize any one in the room, and that Mrs. Sophie Hermann told her she 'had been very bad and had not known anyone all that day.' ''

It will at once be apparent that so much of the matters here detailed as are not purely cumulative, have no tendency to prove any charge in the petition against

Vol 173 mo—20

the validity of the will.  If it be granted that the testatrix was anxious to find 'her half-brothers, and eight days before the will was  executed, said she  would leave them her property if she could find them, that would not tend to prove that she was insane, or that the will was not executed according to law, or that the will was procured by the undue influence of her husband.   But on the contrary, it would tend to disprove the first and last charges of the petition.  She did not find them, and she made another disposition of her property.

It is always within the sound judicial discretion of the trial court to reopen a case or to allow testimony in chief to be introduced at a later stage of the trial, giving the opposite side an opportunity to meet and contradict it, of course, but if such  discretion is not wisely exercised, this court will correct it.   [Jackson v. Railroad, 118 Mo. 1. c. 222; State v. Smith, 80 Mo. 1. c. 520.]  But no such condition is here present.  Nor is this case  within the rule laid down  in Glenn v. Stewart, 167 Mo. 584, for there the court refused to allow the witness to testify even in rebuttal.

Finding no error in the record, the judgment of the circuit court is affirmed.  All concur.