T. C. McConnell, *as Administrator, etc., et al.,* v.
Frank O. Keir.

No. 15,027.    (92 Pac. 540.)

SYLLABUS BY THE COURT.

1. Wills—*Probate—Execution—Burden of Proof.* In a proceeding for the probate of a will the burden rests upon the proponents to establish its valid execution. But this rule is qualified by another, which requires only a *prima facie* showing of the validity of the will and its due execution to entitle it to probate.

2. ———— *Prima Facie Showing Sufficient to Admit to Probate—Testamentary Capacity.* Where a will is executed in proper form by one who the subscribing witnesses testify was of sound mind and free from restraint, a *prima facie* showing is made sufficient to admit the will to probate. In such a case, where the claim that the testator lacked testamentary capacity is based solely upon remote instances of conduct from which it is sought to raise a presumption that he was of unsound mind, and involves an inquiry into his past life, it is the duty of the court to admit the will to probate, and leave these questions to the more formal procedure of a contest.

3. ———— *Knowledge of Contents—Presumption—Assistance of a Beneficiary.* In proceedings for probating a will, where there is no evidence of extreme weakness of the testator arising from the near approach of death nor of lack of capacity to understand what he was doing, the usual presumption of his knowledge of the contents of a will formally signed by him in the presence of witnesses is not overcome by the fact that one who assisted in its preparation is a beneficiary under its terms.

4. ———— *Sufficiency of Evidence—Knowledge of Contents.* Evidence examined and held to make a sufficient *prima facie* showing that the testator knew the contents of the paper purporting to be his will.

5. ———— *Written Statements of Subscribing Witnesses.* The written statements of the subscribing witnesses made under oath at the preliminary offer of probate are admissible in evidence on the trial in the district court upon appeal from proceedings to probate a will.

Error from Jackson district court; MARSHALL GEP-HART, judge. Opinion filed November 9, 1907. Reversed.

*C. M. Corlett, E. D. Woodburn, F. T. Woodburn,* and *A. E. Crane,* for plaintiffs in error.

*C. F. Hurrel, Guy L. Hursh,* and *Charles Hayden,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: This is a proceeding in error from a judgment of the district court denying the probate of a will. On the 17th day of March, 1905, Thomas Keir, a resident of Jackson county, died, leaving an estate consisting of a farm and personal property. He left surviving him his wife, Bessie Keir, and a son, Frank O. Keir. Within a few days after his death a paper purporting to be his last will and testament was presented to the probate court and offered for probate. Written objections thereto were filed by Frank O. Keir. The subscribing witnesses came into court and were examined, and their testimony was reduced to writing in accordance with the provisions of the statute, from which it appears that the testator possessed testamentary capacity, was free from restraint, and that the will was executed, signed and witnessed in due form. The circumstances attending its execution were testified to by several persons present at the time. The opponent of the will also offered testimony in support of his objections.

The probate court held that the will was not entitled to probate and the proponents appealed to the district court, where there was a second, lengthy and formal trial in the nature of a contest of the will, the cause being tried to the court. At the conclusion of the testimony the court made findings of fact—in substance, that the deceased at the time the will was executed was not of sound mind, but was, and for a long

time had been, under an insane delusion; that at the time the will was executed he did not know and never knew the contents of the paper purporting to be his will; and that at the time of its execution he was unduly influenced by his brother. Probate of the will was for these reasons denied.

There are numerous contentions in respect of error in the introduction of evidence, most of which become of slight importance from the view we have taken, which requires that the cause be reversed; but as this necessitates another trial we shall refer to some of the contentions urged.

Complaint is made that the court held the burden of proof to be upon the proponents. This ruling was right. The burden of proof rests, of course, upon the proponents to establish the validity of the will. (*Hospital Co. v. Hale,* 69 Kan. 616, 77 Pac. 537; *Wright v. Young,* 75 Kan. 287, 89 Pac. 694.) The error did not consist in requiring the proponents to take the burden of proof but in overlooking the established rule that only a *prima facie* showing is required to authorize a will to be admitted to probate, and was based upon a misconception of the nature of the proceedings for the probate of a will and the issues involved therein, which manifestly arose by reason of the enactment of chapter 526 of the Laws of 1905, which had not then been construed by this court. The amendment adopted by that statute provides that when a will is offered for probate "the court shall cause the witnesses to such will and such other witnesses as any person interested for or against having the same admitted to probate may desire to come before such court." Since this cause was tried in the lower court we decided, in *Wright v. Young,* 75 Kan. 287, 89 Pac. 694, that the amendment above referred to did not enlarge the issues involved in such a proceeding or authorize a contest of the will in the probate court, nor abrogate the

rule that only a *prima facie* showing is required to admit a will to probate. It was there said:

"The examination is still preliminary in its character.

"Each case depends to some extent upon its own facts and circumstances; but it rests largely in the discretion of the probate court, or the district court on appeal, to determine the extent of the inquiry which is proper in respect to such matters as undue influence when it is claimed by those who oppose the probate that the will was obtained by undue influence amounting to the restraint contemplated by section 15. (Gen. Stat. 1901, § 7952.)

"When the court can see from the character of the evidence offered in opposition that it involves matters which it is probable that either party will desire submitted to a jury, and belongs peculiarly to a regular contest of the will, and that, notwithstanding the evidence offered, it should not be allowed to overcome the *prima facie* showing made by the proponent, it lies in the discretion of the court to admit the will to probate and relegate the controversy to a more formal field. Only a *prima facie* showing is required to admit a will to probate, and this rule has not been abrogated by the act of 1905. A different rule of evidence obtains in the rejection of a will, and a court should not refuse to admit a will to probate unless, for some of the reasons mentioned in section 15, the court finds conclusively from the evidence that it should not be probated." (Page 294.)

In the opinion the following language from *Hospital Co. v. Hale,* 69 Kan. 616, 77 Pac. 287, was approved:

"In both courts the procedure is of the most informal and perfunctory character, and when a *prima facie* case is made upon the several points as to validity of execution, testamentary capacity, and freedom from illegal restraint, the order of admission should be made, leaving for the more formal and regular proceedings provided by section 20 of the wills act (Gen. Stat. 1901, § 7957) the contest of the nicer and more difficult questions, a contest in which issues are duly formed, evidence properly produced, [and] the machinery found for obtaining a jury should one be ordered." (Page 619.)

McConnell v. Keir.

It is a rule of general application that the burden of proof rests on those who offer a will for probate to establish its validity; that is, that certain indispensable requirements have been complied with, such as, in the case of a written will, that it was signed by the testator as his will, in the presence of the witnesses, and subscribed by them in his presence; that at the time of its execution he was qualified to make a will—that is, was of lawful age and possessed of a sound mind, and, under some statutes, as in ours, "not under any restraint" (Gen. Stat. 1901, § 7952) at the time the will was executed. But it is also a rule of quite general application that a *prima facie* showing of these things is all that is required.

The law favors the natural inclination of men to dispose of property by will, and because certain presumptions are indulged in the *prima facie* showing is deemed sufficient to admit a will to probate. It is necessary to the validity of a will that the testator know the contents thereof at the time he signs it. But there is a presumption that he does know from the fact that he has signed it as his will. The statute requires a *prima facie* showing that he was of sound mind and free from restraint at the time the will was executed, but there is no presumption that because a man executes a will he is insane. The presumption is to the contrary, and some force is given to it, so that the testimony of the subscribing witnesses that he appeared to be sane and free from restraint is usually deemed a sufficient *prima facie* showing. Where there is no evidence of restraint at the time the will was executed and the testator appears to have been generally regarded as of sound mind, or where the claim that he lacked testamentary capacity is based upon remote instances of conduct from which it is sought to overcome the presumption of his sanity and the testimony of the subscribing witnesses, and involves an inquiry into his past life, it is the duty of the court to admit

the will to probate and leave these questions to the more formal procedure of a contest. (*Hospital Co. v. Hale,* 69 Kan. 616, 77 Pac. 537.)

The absurdity of the other view of the law of probate, which starts with the presumption that the testator was insane when he signed the will, and requires the proponents to be prepared at the preliminary offer of probate to explain every act of his life which it is claimed tends to show unsoundness of mind, is aptly illustrated by the record in this case and the result reached. The testator was a man of intelligence, a prosperous farmer, and had lived for fifty years on the same farm. He had accumulated property of the value of $16,000, and until the day of his death managed his business affairs himself. There was an absence of any evidence tending to show unlawful restraint at the time the will was executed. In addition to the subscribing witnesses, who testified to his sanity, eight or nine of his neighbors, one of whom had known him forty-eight years and some of whom had an acquaintance with him which extended over forty years, testified that they supposed him to be as sane as other people. Some of them saw him during his last sickness, which was of short duration. Under the theory that the amendment of 1905 authorized what is practically another contest of a will in the proceedings for probate, the entire life of the testator was inquired into, including his religious and political opinions, and dozens of witnesses were examined for the purpose of proving that at some period or other in his life he had entertained delusions from which it was sought to raise an inference of his insanity. Much of the testimony offered related to matters which, however relevant in a contest proceeding, had no place in the preliminary inquiry which was before the court.

It is insisted, however, that the finding of the court that Thomas Keir did not know and never knew the contents of the paper he signed is supported by evidence and settles the controversy. The difficulty is

that the case was tried as a contest instead of an offer of probate, and upon the mistaken theory that something more than a *prima facie* showing was necessary to entitle the will to be admitted. It is true, the evidence of the proponents was that the will was not read by the testator. The will was typewritten by T. C. McConnell, county clerk, who resided at Holton, and who testified that he made it from a memorandum taken to him by William Keiry (the testator's brother, who also requested him in behalf of the testator to consent to act as executor); that he inserted his own name in the blank space left for the name of the executor, and at once, on the same day, took the typewritten copy to the residence of Thomas Keir. After the witnesses who had been sent for arrived, and before signing, Thomas Keir asked if the will had been typewritten and was told that it had been. He then signed it without reading it. It appears that he signed the paper after assuring himself by inquiry that its contents were what he supposed them to be, and this was *prima facie* evidence that he did know the contents. There is no presumption that some one committed a fraud upon him. Moreover, the original paper, from which Mr. McConnell made the typewritten copy, was produced and appears to be substantially the same as the will. In *Hess's Appeal*, 43 Pa. St. 73, 78, 82 Am. Dec. 551, the point was raised that because the testator did not read the will he was ignorant of its contents. The scrivener testified that the paper signed was written in accordance with the testator's instructions. The will was held valid, and the court said: "When the testator trusts his scrivener, why should we distrust him, when there is no word or act that impeaches his honesty?" (Page 78. To the same effect see *Beyer v. Hermann*, 173 Mo. 295, 73 S. W. 164; *King and others v. Kinsey, Ex'r, and others*, 74 N. C. 261; *Yoe v. McCord*, 74 Ill. 33.)

It may be said that there was no witness who testified to the fact that the testator dictated the memo-

randum to his brother, but the circumstances surrounding the preparation of the will and its execution after the inquiry made by the testator constituted a sufficient *prima facie* showing that he knew its contents, and bring the case within the rule laid down in *Sheer v. Sheer,* 159 Ill. 591, 43 N. E. 334. There it was said:

"Where a will is shown to have been prepared at the request of a testator, even under general directions, and is afterward executed in the manner provided by law, it should not be set aside on the ground that he did not understand what it contained, except upon clear and satisfactory proof of that fact." (Page 597.)

It is argued that the usual presumption of the testator's knowledge of the contents is met by the fact that William Keiry, who assisted in its preparation, is a large beneficiary under the will. This, however, is not sufficient to overcome the presumption of knowledge, where there is no evidence of extreme weakness arising from the near approach of death or of lack of capacity on the part of the testator to know and understand what he is doing. The rule has been thus stated:

"A suspicion is justly entertained of a will conferring large benefits on the person by whom or by whose agent it was prepared, . . . but it has been said that this suspicion goes no further than to necessitate somewhat stricter proof as to the testator's *capacity,* though not as to his *knowledge* of the contents of the will. Such knowledge is of course requisite; but it will be presumed if there is no evidence to the contrary, and if capacity is duly proved." (1 Jar. Wills, 6th ed., *37.)

One other assignment of error deserves mention: The proponents offered in evidence the original will, to which were attached the written statements of the subscribing witnesses made under oath at the preliminary offer of probate. The court sustained an objection to these statements, and they were detached and the original will admitted without them. The

McConnell v. Keir.

contention of the opponent of the will is that these statements, being *ex parte* affidavits, were not admissible. While the ruling of the court may not have affected the substantial rights of the proponents, inasmuch as the subscribing witnesses were present in court and gave their testimony, we think the sworn statements were competent evidence in a preliminary proceeding of this kind. The statute provides that the testimony of the witnesses to a will shall be reduced to writing, subscribed by them, and filed. In Illinois, as in some other states, it is provided by statute that these written statements taken on the preliminary offer of probate are admissible as evidence in a subsequent contest of the will in a chancery proceeding. Mr. Wigmore, in his work on Evidence, is inclined to doubt the competency of such statements as evidence in a subsequent appeal from the probate court, at least without accounting for the absence of the subscribing witnesses, and regards the statutes referred to as "anomalous and accidental." (2 Wig. Ev. § 1417.) Whether admissible as evidence in an action for contesting the will it is unnecessary to decide, but in a trial *de novo,* as this was, they were as competent as they would have been in the first instance in the probate court.

It follows from what has been said that the judgment must be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.