George W. SNYDER

v.

LEHIGH VALLEY RAILROAD COMPANY.

Civ. A. No. 16923.

United States District Court
E. D. Pennsylvania.

July 23, 1956.

Richter, Lord & Levy, Philadelphia, Pa., by Seymour I. Toll, Philadelphia, Pa., for plaintiff.

Robert W. Sayre and Joseph Ewing, Jr., Philadelphia, Pa., of Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendant.

REEVES, District Judge.

While plaintiff urges many errors in the trial of the above cause, yet counsel for the defendant stoutly insists that his motion for a directed verdict in favor of the defendant at the close of all of the evidence should have been granted and that all of the alleged errors would thereby become moot. If the latter motion should be acted upon favorably, then it is true that the questions urged by plaintiff may properly be disregarded.

Adverting to the facts: The plaintiff was an employee of the defendant over a period reaching back to 1941. His claim is for an injury sustained about 1 P.M., on September 1, 1953. At that time the plaintiff was engaged, near Rockdale, Lehigh County, Pennsylvania, in removing anchors from rails of track No. Two, over which traffic moves toward the East on defendant's railroad. Plaintiff had been employed specially in removing anchors (a device designed to stabilize the rails) for a period of approximately two years. During that period he had not suffered any injuries growing out of accidents in his operations. About two years prior, however, to the date of his injury, while occupied in tamping ballast stones under the ties of defendant's railroad, a ballast stone, by reason of the force used in tamping or hammering, was thrown against his eyeglasses, but with such slight force that no harm was done. Plaintiff said that, at that time, he asked the foreman to provide goggles for his use as a workman on the railroad.

On the instant occasion, the plaintiff, with a crew of approximately thirty men, was engaged in lifting the track from three to four inches above its prior level. In doing this, ballast stones had been provided as a base. These were dumped at a point where the track was being raised; and at first covered the ties and the lower part of the rails. After the ties under the rails had been lifted up by jacks, ballast stones were tamped under the ties so as to give the rails a firm roadbed.

In removing anchors, the plaintiff used a sledge hammer to dislodge the anchor from the rail. Such anchor was described as "Improved Fair Rail Anchor." It is designated as a one piece anticreeper, and made from high carbon steel rolled to a special T section and dropforged into shape. The one end is curved to bear on the top of the base, on one side of the rail, and along the entire bottom of the base. Weight of anchor, three pounds. The larger part being on the outside of the rail and the inner part being attached by a short notch over the flange of the rail, to dislodge, it was necessary to strike downward and outward. Some anchors were more easily dislodged than others. In this case, a 12 pound sledge hammer was used to effect a detachment. At the time in question the plaintiff stood, as was the practice and custom, with his left foot on the outside, on the top or curved part of the anchor, so as to prevent it from being thrown, if easily dislodged, any appreciable distance from the place where it was attached. The plaintiff said he struck a blow with the 12 pound sledge hammer and that the force thus exerted drove the anchor from under the rail and his foot and carried it approximately three feet horizontally with the ground. Apparently it struck one of the stones used for ballast in such way and with such force that a stone was thrown upward and struck the right lens of his eyeglasses. The force was great enough to break the lens and to drive pieces of the glass into his right eyeball. He was rendered totally blind in the right eye, and of course suffered great pain

and considerable medical expenses and such disabilities as would accrue by reason of the total loss of the sight of one eye.

The averments of the complaint, in effect, were those of general negligence. At the trial, however, it was the contention of counsel for plaintiff that the defendant owed the duty, not only to use ordinary care to furnish the plaintiff a reasonably safe place in which to work, but also, in the same way, to provide a protective device, such as goggles, to obviate an injury of the kind actually accruing to the plaintiff.

The only evidence on the question of liability was that of the plaintiff. The verdict of the jury, orally received, was that there was no negligence on the part of the defendant, nor, said the jury foreman, was the plaintiff negligent, but that it was a "freak accident."

During the argument to the jury, counsel for plaintiff repeatedly advised the jury that the plaintiff was not the beneficiary of workmen's compensation, and that he depended wholly upon the verdict of the jury to compensate him for his injuries.

The court instructed the jury that it was the duty of the defendant to use ordinary care to provide a reasonably safe place for the plaintiff to work, and, moreover, that it was its duty to use such care to provide such protective devices as the facts would warrant.

During the deliberation of the jury, and while the court was engaged in the trial of another cause, a written inquiry was made through an attendant deputy marshal as to whether the plaintiff was receiving workmen's compensation. Relying upon the repeated statements of counsel for plaintiff that the plaintiff was not receiving workmen's compensation, the court answered the jury's question in the negative. The case on trial was not interrupted to call the jury into the courtroom nor was counsel advised of the message, for the reason that only one answer could have been returned. It was an immaterial and inconsequential inquiry.

Based upon instructions of the court, and upon this episode, counsel for plaintiff is now urging the necessity for granting a new trial.

Other facts may be stated in the course of this Memorandum Opinion:

1. On the defendant's motion for a directed verdict, the jury sensed the identical reasons why the court should have directed a verdict for the defendant at the close of the testimony. It said that the injury to the plaintiff resulted from a "freak accident."

Oftentimes the word "accident" is used in such a sense as not to exclude the idea of negligence on the part of one whose act or omission caused the injury. But the term "accident", as contemplated by the jury in this case and as the facts fully justified, is also used to indicate an injurious occurrence which was not only actually unforeseen but which could not reasonably have been foreseen, that is to say, a casualty which could not be prevented by ordinary care and diligence. 65 C.J.S. Negligence, § 21, p. 429.

So the only question is whether this was a casualty which could have been prevented by the use of ordinary care and diligence. The evidence was that the plaintiff, with others, was engaged in elevating a railroad track of the defendant near Rockdale, Pennsylvania. Plaintiff said that his work in that enterprise was to remove or dislodge the rail anchors. He had been so engaged for a period of two years. During that period he had used identical methods and so far as the testimony showed no prior accidents had been experienced. It was the practice to dump rock ballast over and along the track to be elevated, and then such ballast was tamped under the ties to make a firm roadbed. There was no evidence or even any suggestion that any other method could have been pursued, nor was there evidence that, in removing an anchor there had ever been such a rebound of a stone as in this case. The plaintiff had requested goggles, not for protection in removing anchors, but for protection in tamping stones under the ties.

The provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. require that, as a ground for recovery, employee's injury must be caused, at least in part, by the negligence of the employer, and where employee's evidence of negligence and causation amounts to nothing more than a scintilla, the court must enter judgment for defendant as a matter of law. Kautz v. Delaware, Lackawanna & Western R. Co., D.C., 129 F. Supp. 777; Brady v. Southern Railway Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239.

As said in Willard v. Bethurem, Mo.App., 234 S.W.2d 18, where accident is one that happened and to which human fault does not contribute, there can be no recovery.

And also, Hoffman v. Peerless White Lime Co., 317 Mo. 86, 102, 296 S.W. 764. American Jurisprudence, Vol. 38, Section 6, p. 648, contains the following text:

"In accord with the basic principle that liability for negligence is predicated upon fault of the person charged, and that a loss suffered by one person which is not attributable to negligence or misconduct on the part of another is damnum absque injuria, it is recognized that no action will lie for injuries attributable to what is termed inevitable or unavoidable accident, * * *."

The text contains also the recital:

" * * * and further that an accident need not be free from human agency in order to be unavoidable."

It follows from the foregoing that the court should have directed a verdict for the defendant at the close of the evidence. However, in view of the decisions, it seemed the better practice to await the verdict of the jury and then rule on the question of the sufficiency of the evidence. This was done.

2. In his motion for new trial, plaintiff's counsel complains that the court did not sufficiently instruct the jury on the question of furnishing the plaintiff a reasonably safe place in which to work, or to provide him with a protective device. The alleged error urged by counsel for plaintiff is that the duty of the defendant was a continuing one. The evidence did not justify such a suggestion to the jury. The law of the case, according to the theory of counsel for plaintiff, was fully covered by the instructions.

3. The remaining question urged by counsel is that the court "instructed the jury" in the absence of counsel, or the parties. It is the general rule announced by all of the authorities, that communications between the trial judge and the jury after submission of the case must take place in open court and in the presence of the parties or their counsel. No sound argument can be made against this wholesome rule and the author has been diligent and alert always to observe the rule. In the instant case the jury made written inquiry while the court was engaged in the trial of another case as to whether the plaintiff was receiving compensation benefits. The court (relying upon the repeated statements of plaintiff's counsel that he was not, and there being no evidence to the contrary and such statements having been made without objections on the part of counsel for defendant) felt justified in giving a negative answer. It was in nowise an instruction to the jury. It was merely answering an immaterial and inconsequential question. It did not seem necessary, in the interest of facilitating and expediting the trial of cases, to interrupt another case and bring counsel before the court to formulate an answer, the truth of which was acknowledged and which was immaterial in the deliberation of the jury.

In the case of Yates v. Whyel Coke Co., 221 F. 603, loc. cit. 608, the Court of Appeals for the Sixth Circuit considered a somewhat similar situation. In doing so, it quoted as follows:

" 'The power of federal judges, as defined by the common law, in the submission of cases and the control

of the deliberation of juries, still remains.'"

The court then said:

"A trial court should avoid instructing a jury in the absence of counsel for the respective parties, when it can conveniently do so, and especially where the supplemental charge covers propositions of law not dealt with by the original charge; * * *."

As heretofore stated, and contrary to the insistence of counsel for the plaintiff who really knows the facts, the court did not instruct the jury. Where a judge merely answers an inquiry and does not instruct, error cannot be urged. Foster v. Beckman, Tex.Civ.App., 85 S.W.2d 789; Beyer v. Hermann, 173 Mo. 295, 73 S.W. 164.

And, as said in a text found in Volume 53 American Jurisprudence, Section 942, p. 667, the act of the court in merely replying to a jury's request for information is generally addressed to the court's discretion. In 89 C.J.S., Trial, § 473, p. 117, an identical situation is covered in these words: "A mere inquiry by the jury relating to the possible findings is not misconduct, * * *."

There are cases which have held that the verdict will not be set aside where the communication is a mere collateral direction which could not influence the jury in arriving at its verdict. In the instant case it was not even a collateral direction but merely an answer as to a collateral fact emphasized repeatedly by counsel for plaintiff in his arguments to the jury.

4. Although the jury found that both plaintiff and defendant were free of negligence, and that it was a "freak accident," this finding was fully confirmed by a poll of the jury when the verdict was returned. The recommendation of the jury that the plaintiff be paid $5,-000, and given life employment was such surplusage that the court had but one duty, and that was to disregard the recommendation, and to order judgment upon the verdict for the defendant. Pat-

terson v. United States, 2 Wheat. 221, 15 U.S. 221, 4 L.Ed. 224.

In view of the above, the motion for a new trial should be overruled and it will be so ordered.