CHARLES G. CARMEN, *Appellee,* v. L. F. KIGHT *et al.,* *Appellants.*

No. 16,850.

SYLLABUS BY THE COURT.

1. WILLS—*Devise by Wife—Consent of Husband.* The testatrix, who had a husband but no children, had a right to devise one-half of her property to her brothers and sisters without the consent of her husband.

2. ———— *Confidential Relations — Undue Influence — Presumptions.* Her sister, a beneficiary under the will, nursed and cared for testatrix during an illness of several months and the relations between them were affectionate and confidential, but these facts of themselves do not raise a presumption that the sister exerted undue influence over the testatrix in the making of the will.

3. ———— *Evidence of Fraud or Undue Influence.* Upon the request of the testatrix her sister asked the scrivener to prepare a will and communicated to him the provisions which the testatrix desired to be written in it and was in the house

with the testatrix when the will was executed, but there is no testimony that she attempted to influence or control the testatrix in the disposition of her property, a disposition which, under the circumstances, was not unnatural nor illogical. *Held,* that these facts do not of themselves warrant an inference that the will was executed through fraud or undue influence.

4. ———— *Same.* The mere fact that the testatrix desired that her husband should not know of the will, and that it was executed without his consent or knowledge, and that the sister and scrivener were aware of this purpose, does not create a presumption of undue influence.

Appeal from Cowley district court. Opinion filed June 10, 1911. Reversed.

*G. H. Buckman,* and *S. C. Bloss,* for the appellants.
*W. P. Hackney,* and *J. T. Lafferty,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Charles G. Carmen to set aside a will made by his wife, without his knowledge or consent, which gave him the use of her property during his lifetime, or until a remarriage by him, after which it was to be equally divided among the defendants, the brothers and sisters of the testatrix. In his petition Carmen alleged that at the time of making the will his wife was sick and had not the mental capacity to make a disposition of her property by will, and also that her sister, Mrs. L. F. Kight, by reason of her close relationship and association with Mrs. Carmen, had exerted an undue influence over her and had wrongfully induced the making of the will. The will was attacked on other grounds, but at the trial all were abandoned except that the execution of the will was procured by undue influence. The trial court sustained this contention and adjudged the will to be void, from which judgment the defendants appeal.

Carmen and his wife had no living children nor living issue of deceased children. He was seventy-four

and she was sixty-two years of age at the time the will was made. The lots on which the house was built were purchased with money which she received from her mother's estate, and so was the building material, while plaintiff, who was a carpenter, contributed his labor toward the erection of the house. About eleven months before her death she received $1000 of insurance on a policy covering the life of her son, wherein she was named as beneficiary, and this amount was deposited in a bank in her own name. Of this money, about $300 was expended by them in making a visit to relatives in another part of the country, and $200 of it was used to pay a promissory note which both of them had executed. The relations between them appear to have been amicable and pleasant up to the time of her death. She was afflicted with tuberculosis, and about five months prior to her death Mrs. Kight, her sister, came from Iowa to nurse and care for her. Some time afterward, on the request of Mrs. Carmen, Mrs. Kight went to Winfield and asked Mr. Rencenberger, who was county clerk and a friend of the family, to prepare a will and told him the disposition which Mrs. Carmen wished to make of her property. A few days later Mr. Rencenberger and his wife went out to the Carmen home, carrying with them a copy of the will drawn as directed except that the names of the beneficiaries had not been filled in. The Rencenbergers spent several hours visiting at Carmen's, and while there Mrs. Carmen discussed with them the making of the will and the disposition she desired to make of her property. She read the will which had been prepared, and after it was completed it was read to her by Mr. Rencenberger. This was done when Mr. Carmen was not in the house, and when Mr. Rencenberger informed her that to devise the entire property to others than her husband his consent was necessary, she said she did not wish Mr. Carmen to know about the will and would prefer not to make a will rather than that he should have knowledge

of it prior to her death. The testimony shows that her mind was clear, that she understood the provisions of the will, the character and extent of her property, and that it was disposed of in accordance with her desires.

It is plausibly contended that there was nothing in the purpose or action of Mrs. Kight, as disclosed in the evidence, which approached undue influence, and nothing in the relations and acts of the parties upon which a presumption of undue influence could be based. The things counted on to show that undue influence was exerted by Mrs. Kight were that she procured Mr. Rencenberger to draw the will and told him what disposition was to be made of the property; that she attended to business for her sister, presenting checks at the bank and paying bills, and even giving money to Mr. Carmen himself; that he was not informed by Mrs. Kight, or anyone, that a will was in contemplation or the purpose of the visit of Mr. Rencenberger and wife, but supposed that they were there on a friendly visit; that he was sent by Mrs. Kight to a store for groceries, after the Rencenbergers arrived, and when he returned was sent back again for something said to have been forgotten; and it was argued that this was done so as to prevent his presence in the house when the will was being executed. Now there is nothing in the testimony showing that Mrs. Kight advised her sister to make the will nor as to the disposition she should make of her property, nor is there anything showing that she had a dominating influence over her sister. It is true, she carried a message from her sister to the scrivener in regard to the preparation of the will, but nothing was said or done from which an inference of undue influence could be drawn. She was present in the house when the will was signed and was in and out of the room, engaged in housework and the care of her sister, while the conference was had between Mrs. Carmen and the scrivener in regard to the will, but it does not appear that she took any part in the discussion preliminary to the signing of the will. Upon request, she

brought the pen and ink which were used, and undoubtedly she knew that the will was being executed and also that she was to be named in it as one of the beneficiaries, but the testimony shows that Mrs. Carmen was capable and that in disposing of her property she was guided by her own will and judgment. No doubt the relations between Mrs. Kight and her sister were affectionate and confidential, but it was held in *Ginter v. Ginter*, 79 Kan. 721:

"The mere existence of confidential relations between a testator and a beneficiary under his will does not raise a presumption that the beneficiary has exerted undue influence over the testator and does not cast upon the beneficiary the burden of disproving undue influence." (Syl. ¶ 8.)

Nor do any of the circumstances appear to afford grounds for such a presumption. Mrs. Carmen had no children, and she had a right to dispose of one-half of her property without the consent of her husband. (Gen. Stat. 1868, ch. 117, § 35, Laws 1883, ch. 163, § 1, Gen. Stat. 1909, §§ 9811, 9812; *Noecker v. Noecker*, 66 Kan. 347.) There was nothing unnatural in the disposition which was made of the property. One-half of it went to the husband, and he was given the possession and use of the other half until his death or remarriage. The property came largely from her mother's estate and it was reasonable and natural that she should devise one-half of it to her sisters and brothers. Mrs. Kight, who ministered to the wants of the testatrix for some twenty weeks prior to her death, received no greater share of the estate than the other sisters and brothers, as it was divided equally among all seven of them. The fact that Mrs. Carmen did not desire that her husband should know of the will is not strange, or at least it does not indicate fraud or undue influence. Wills are generally made without publicity, and while there may be few cases where secrecy in this regard is ever justifiable as between husband and wife secrecy alone creates no presumption of fraud or undue in-

fluence. (*Fox and others v. Martin*, 104 Wis. 581; *Loennecker's Will: Consaul v. Loennecker*, 112 Wis. 461; *Logan's Estate*, 195 Pa. St., 282; *Tibbe v. Kamp*, 154 Mo. 545; 1 Underhill, Law of Wills, p. 184.)

It does not appear that the will was kept from the knowledge of Carmen through any suggestion of Mrs. Kight. Mention was made of the fact that she sent him to the grocery to purchase something for dinner, but there is nothing to show a purpose to have a will executed while he was away on this errand, and in fact the will was not made until the afternoon, long after his return from the grocery.

It is true that Mrs. Kight drew some money from the bank and paid bills and expenses, but this was done under the direction of her sister. Mrs. Carmen had managed the finances and, besides, the money expended was her own and was deposited in the bank in her own name. She paid the railroad fare of her sister, improved the family burying lot, provided for a casket for her body, and had her sister draw and pay money to Mr. Carmen to be used for particular purposes. Nothing in any of these transactions indicated dishonesty or even selfishness on the part of Mrs. Kight.

We find nothing in what was said or done by her to warrant an inference that Mrs. Kight wrongfully or fraudulently kept Carmen away while the will was being executed or that fraud was being perpetrated upon him in this respect by anyone. It is true, as plaintiff contends, if there is any substantial testimony of undue influence the findings of the trial court can not be set aside, but a careful examination of all the testimony discloses nothing which approaches undue influence under the rule of *Ginter v. Ginter*, 79 Kan. 721. On the other hand, the testimony shows testamentary capacity, free agency, a natural and logical disposition of the property, and a valid will. The trial court should have sustained defendants' demurrer to the evidence,

and at the close of all the evidence it should have rendered judgment for defendants.

The judgment is reversed and the cause remanded with directions to enter judgment for defendants.