No. 30,691.

MAUDE WOODWORTH, as Guardian of the Estate of HELEN M. GIDEON, an Incompetent Person, *Appellant*, v. MORA E. GIDEON et al., *Appellees*.

(12 P. 2d 722.)

Opinion filed July 9, 1932.

*Albert M. Cole, Floyd W. Hobbs,* both of Holton, *J. J. Schenck, C. P. Schenck, Floyd A. Sloan* and *W. Glen Hamilton,* all of Topeka, for the appellant.

*M. A. Bender, E. D. Woodburn,* both of Holton, and *A. E. Crane,* of Topeka, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action to set aside the consent of Helen M. Gideon to the will of her husband on the ground of her mental incapacity, undue influence and duress, and the lack of independent advice. The trial court found generally for defendants. Plaintiff has appealed.

Thomas H. Gideon and his wife, Helen M. Gideon, resided in the western part of Jackson county for many years, and by their industry and thrift acquired substantial land holdings and other property. They later acquired a suburban tract of perhaps ten acres near Holton, which they made their home. They had three sons and four daughters, who at the time of making the will in question were adults. In February, 1924, Thomas H. Gideon executed his will, to which his wife consented in writing. The will provided that the widow should have the use for her life of $10,000 in government bonds and other securities and of the home place near Holton, the income to be used by her, and if necessary for her comfort, main-

tenance, or support, that the corpus of the property might be so used. It devised specific lands to each of the sons, each son receiving, as we understand, the land on which he was then living. For the purpose of equalizing shares and increasing the residue one son was required to pay to the executor $3,000 and another $6,000. The residue of the property, including the remainder after the death of the widow, was divided equally among the children. The will nominated the widow and a son, Mora, as executors.

Thomas H. Gideon died December 25, 1930, and soon thereafter his will was admitted to probate, the son alone being named as executor. Sometime in January, 1931, in a proceeding regularly had in the probate court of Jackson county, a commission of physicians found Helen M. Gideon to be a distracted person, incapable of managing her affairs, and recommended the appointment of a guardian for her estate, and such letters of guardianship were duly issued to her daughter, Maude Woodworth. Soon thereafter the guardian brought this action.

With regard to Mrs. Gideon's mental capacity there was evidence that she was forgetful and absent-minded to an extent that was noticeable to those who were about her quite a little, and that at times she lacked concentration and comprehension of matters which were being discussed. There was a conflict in the testimony as to whether she was worse in those respects at the time of the trial than when she consented to the will. It is conceded that she knew her children, kept house, got the meals, and without serious inconvenience performed all the duties in connection with her household. Evidently she was a woman who had centered her mind largely upon her home, her household duties and her children. Matters concerning managing the farm, purchasing land, making investments in government bonds and other securities she left almost entirely to her husband, who, it appears, was especially capable in those matters. There is nothing in the evidence which indicates that she did not understand the extent of their property or its value. When Thomas H. Gideon concluded to make his will he went to an attorney at Holton, who had transacted his business for many years, and explained the disposition he desired to make of his property. He discussed it with his attorney on two days. The will was drawn in accordance with his instructions. On the day his will was executed Mr. and Mrs. Gideon went to the office of the attorney. There he read the will to both of them in its entirety and explained its pro-

visions. Mrs. Gideon stated that she and her husband had discussed how they wanted their property disposed of, and that the provisions of the will were satisfactory to her. It was explained to her that the will did not bind her unless she consented to it; that if she did not consent to it she could go into probate court after the will was probated and elect to take either under the law or under the will; that if she did so, and elected to take under the law, she would be entitled to one-half of all the property. She stated that all she wanted was the $10,000 and the home, that she was satisfied with the provisions of the will, and she executed her consent to it in writing. There is evidence that she later stated, on more than one occasion, in effect, that the will had been made, that each of the boys would get the land on which he was living, that she would have the use of the home and $10,000, which was all she wanted, and that she was entirely satisfied with the provisions of the will. She was present when the will was probated and advised the probate judge that she was familiar with the terms and provisions of the will and that she was entirely satisfied with it. The attorney who had prepared the will, and who was looking after its probate, advised the probate court that Mrs. Gideon would be of no aid in the capacity of executrix in carrying out the provisions of the will and she was not appointed executrix. Mrs. Gideon had had little or no experience in extended business transactions, and the handling and investing of the $10,000 left for her use by the will was a task she did not care to undertake. Soon after the will was probated, in company with two of her sons, she went to one of her neighbors and requested her to sign a complaint which would authorize the probate court to appoint one of her sons guardian of her estate. The neighbor signed the complaint. The court appointed one of the daughters instead of the son.

Appellant argues two points, which really blend together: First, that a confidential fiduciary relation existed between Helen M. Gideon and her husband; and second, that she received no independent advice as to her legal rights and of the effect of signing the consent. It is true that a confidential relation exists between husband and wife. It is proper that such a relation should exist. The fact that it does exist is not evidence of fraud or undue influence. Here were two people who, by their joint efforts, by their industry and capabilities, had acquired a substantial competence, she centering her attention upon the home and the family and he upon the

management of the business and the acquisition of property. As they reached the closing years of their lives they discussed how to leave this property. Their three sons were situated on farms. They wanted the boys respectively to have the lands .they were using. Both wanted the widow to have plenty for her needs, and that was provided. A substantial residue was to be divided among all the children. There is nothing unnatural in that unless it be that their daughters, as a class, did not receive as much of their property as their sons. Perhaps this fact lies at the base of this lawsuit. But that was a matter for the parents to determine. The fact that they did so dispose of their property is no indication that any undue influence or duress was used by the husband upon his wife, nor does that fact tend to show either his or her mental incapacity.

Appellant cites *Flintjer v. Rehm*, 120 Kan. 13, 241 Pac. 1087, and allied cases as being applicable in principle to the consent of a wife to the will of her husband and to the facts here. The decision in the Flintjer case was based upon the provisions of our statute (R. S. 22-214). It is clear that the statute and decision based thereon have no application here, for neither the attorney who prepared the will nor the testator who gave instructions for its preparation was a beneficiary. Where the facts do not come within the statute last referred to, questions of undue influence, mental capacity, and the necessity for independent advice, are governed by the ordinary rules of law pertaining to those matters. (*Stunkel v. Stahlhut*, 128 Kan. 383, 277 Pac. 1023; *Kelty v. Burgess*, 84 Kan. 678, 115 Pac. 583; see, also, *Warwick v. Zimmerman*, 126 Kan. 619, 220 Pac. 612; *Smith v. Smith*, 84 Kan. 242, 114 Pac. 245; *Ginter v. Ginter*, 79 Kan. 721, 101 Pac. 634.)

We find no error in the record, and the judgment of the court below is affirmed.

SLOAN, J., not sitting.