No. 35,321

In the Matter of the Estate of ANDY PEIRANO (sometimes known as Andrew Peirano, Deceased). (RUTH PEIRANO, Executrix, et al., *Appellees,* v. CHARLES PEIRANO, *Appellant.*)

(122 P. 2d 772)

Opinion filed March 7, 1942.

*D. M. McCarthy,* of Hays, and *R. J. McMullen,* of Great Bend, argued the cause, and *A. J. Wiles* and *Kathryn O'Loughlin McCarthy,* both of Hays, were on the briefs for the appellant.

*Paul W. Applegate,* of Wakeeney, argued the cause for the appellees.

The opinion of the court was delivered by

SMITH J.: This was a proceeding to probate a will. The probate court admitted it to probate. On appeal the district court ordered it admitted to probate. The parties who opposed the probation have appealed to this court.

The petition for probate alleged that one James Peirano was one of the devisees named in the will which was being offered; that the will was duly executed; was valid; that at the time of the execution testator was of full age, of sound mind and not under any restraint, and the testator Andrew Peirano had died on the second day of August, 1940. The petition then named all of the heirs and stated that they were all named as legatees. The will gave each one of the nephews and nieces of testator $100, left $3,000 to be used for the benefit of his brother Thomas, left his brother Charles $100 and left the residue, 75 percent to Ruth Peirano and 25 percent to James Peirano, a brother. The estate consisted of real property in the probable value of $70,000 and personal property of the probable value of $20,000.

Charles Peirano, a brother, filed an answer to this petition in which he alleged that the instrument' was not the last will of the testator; that the testator did not at the time of its acknowledgment declare it to be his will; that he was not capable of making the disposition of the property; that he was unduly influenced in making

the purported will by his sister Ruth; that the will was prepared by the principal beneficiary, who at the time was the confidential agent of the decedent and that the decedent did not know the contents of the will.

The probate court found that the will was duly executed; that the decedent at the time of the execution was a person of sound mind, of full age and under no restraint and the will was genuine.

Charles Peirano appealed to the district court. After the appeal Ruth Peirano, the executrix, and James Peirano and Ruth Peirano, legatees, filed a reply in which they denied the allegations of the answer.

The district court ordered the will admitted to probate, and the contestants of the will have appealed to this court.

The first assignment of error argued by the appellant is that the court erred in placing the burden of proof on the appellant to show that the testator was not of sound mind; that he was under restraint or under undue influence in the execution of the will and that the will was not properly attested and witnessed. We are unable to follow the argument of the appellant in this respect.

We find the rule as to burden of proof in proceedings to probate a will stated in 2 Bartlett, Kansas Probate Law and Practice, 343, as follows:

"On a hearing for the probate of a will the burden of proof is upon the proponent of the will to show: (1) the testamentary character of the instrument, (2) the testamentary capacity of the testator, and (3) the due execution of the will in accordance with statutory requirements. These elements stand as the epitome of all the proponent is obliged to prove, and he may then rest upon the prima facie case made by this proof. It is consistent to say that this prima facie evidence stands and prevails, unless and until it is overthrown by ascertained facts."

See G. S. 1941 Supp. 59-2224, also *Pee v. Carlyle,* 120 Kan. 200, 243 Pac. 296; *McConnell v. Keir,* 76 Kan. 527, 92 Pac. 540; and *Fuller v. Williams,* 125 Kan. 154, 264 Pac. 77.

The petition for probate of the will alleged that the will was duly executed; that at the time of its execution the testator was of sound mind and under no restraint and the will was genuine. Evidence was introduced by the proponents tending to prove all of the above allegations. At the conclusion of this evidence appellant here demurred to it. This demurrer was overruled. The court in overruling the demurrer properly stated that it was its duty to construe the

evidence of the proponents in its most favorable light to the party offering it; and following that rule concluded that the proponents had made a prima facie case. The rule in such cases is no different than any other trial of controverted issues of fact. The moving party may make a strong showing or a weak one, but if there is any substantial evidence to establish his case the demurrer must be overruled.

The next assignment of error argued by the appellant is that the trial court erred in holding that the appellees made a prima facie case and in overruling the appellant's demurrer to the evidence of appellees.

The appellee argues that this question is not properly before this court because the appellant appealed only from the judgment and not from the order overruling the demurrer of appellant to the evidence of appellee. We have heretofore held that where the appeal is from the judgment we will consider the question of whether or not the trial court committed error in overruling a demurrer of defendant to the evidence of plaintiff. (See G. S. 1941 Supp. 60-3314a; also, *Drenning v. City of Topeka,* 148 Kan. 366, 81 P. 2d 720.) We will, therefore, examine the question of whether or not this demurrer should have been sustained.

The testator was an aged man and had been suffering from diabetes. The will was written during the afternoon of January 27, 1940. The appellee first introduced the evidence of a resident of the county where the testator lived, who had known him for about thirty years. He testified that he heard the testator tell the scrivener that he wanted to make a will and wanted to leave his property to Ruth and Jimmy with $100 apiece to his nephews; that the testator seemed to know what he wanted; that the testator was able to keep in his mind the subject of the conversation; that he saw the testator handed the will and saw him sign it. His attention was called to the fact that the "e" in the signature of the testator appeared below the other letters that comprised the signature. He said he did not know how that happened. He said that the scrivener read the will to the testator and that there was a conversation between the scrivener and testator and that he did not observe anyone exerting any influence over the testator. All the witnesses testified that it took some two or three hours for the will to be written and it was written on a typewriter in the presence of the testator.

Another witness to the will testified that the scrivener prepared

the will and read it to testator, but this witness did not remember whether the testator stated that it was a will. This witness also testified that Ruth Peirano had told him to come out there and that he had told the scrivener and the other witness to come out. The scrivener testified that he went to the home of testator with three other men; that testator told him he wanted his nieces and nephews to have $100 apiece and that he wanted his brother Tom to be taken care of; that testator gave him the description of some of his land and told him how much stock he had; that he formed the opinion that the mental condition of testator was keen and alert; that he read the will to him and he expressed satisfaction with it.

The doctor who was treating testator testified that he had been treating him for diabetes and for burns and abrasions on his feet; that during the 23d, 24th, 26th, 27th and 28th of January the condition of testator was normal.

Another witness to the will testified that he went there with the scrivener and two other witnesses; that he did not go into the house until he was called in; that he saw testator sign the will and saw the other witnesses sign it; that the mind of testator was as alert as he had ever seen it.

The appellee also introduced the testimony of the scrivener, a lawyer, who wrote the will. This witness testified that the testator had consulted him several times; that when testator told him that he wanted the bulk of his estate to go to Ruth and Jim witness told Ruth to leave the room; that testator told him about some other bequests to some members of the family; that he gave him descriptions of some of his land; that he read him the will and testator expressed himself as satisfied with it; that witness formed the opinion that testator was keen and alert.

This testimony of the three men who were witnesses to the will and of the scrivener was considered by the court. On a demurrer to the evidence the court was under the duty to indulge all reasonable inferences that were favorable to the position of the proponents of the will and to take all of the testimony offered as true. There was ample evidence to establish a prima facie case of the elements that must be proven before a will may be admitted to probate, as required by G. S. 1941 Supp. 59-2224.

The appellant here points out various circumstances which he claims compelled the trial court to reach a different conclusion. We have examined these circumstances and find that they go more to

the weight of the evidence and to the inferences to be drawn from it than to whether or not a prima facie case was made.

The next specification of the appellant is that the trial court erred in holding that the purported will was in fact the last will and testament of the testator. The basis of this argument is that the scrivener testified that when he first came into the room where testator was in bed the testator stated that he would like to have the ranch left intact; that he did not want the ranch divided up. This witness also testified that testator said Ruth should have 75 percent and Jim 25 percent; that he wanted to leave a landed estate. The appellant argues the way the will was written the land was all disposed of by a residuary clause and an undivided 75 percent given to Ruth and an undivided 25 percent to James and that no provision was made in the will for the land to be kept intact—hence, this was not the will of the testator but something that the scrivener wrote into the will different from the testator's desires. This argument is not good for the reason that at the same conversation when the witness testified that testator said he wanted the ranch to be held intact he also testified that testator said he wanted Ruth to have 75 percent and Jim 25 percent. It is true that no provision is written into the will to carry into effect the stated wish of the testator to have the ranch held intact. However, all the provisions of the will were read to the testator and he expressed himself as satisfied with it.

Another circumstance upon which appellant places considerable emphasis is that testator said he wanted $100 left to each of fifteen nieces and nephews and only fourteen nieces and nephews were named in the will. This is obviously an oversight on the part of the old gentleman which cannot be made the basis of a judgment striking down the will.

Appellant next argues that the trial court erred in holding that it was unnecessary for the principal beneficiary and one in a position of confidence and trust to show that the testator had read or knew the contents of the will and had independent advice with reference thereto. The basis of the argument on this point is that Ruth Peirano was the principal beneficiary. She was a maiden lady and the testator was unmarried. They lived together in a farmhouse. There is some evidence that she assisted testator in looking after his affairs; that during some of the time that he was ill she wrote checks and paid the help and advised him generally as to the conduct of the affairs of the ranch. There is also some evidence that she asked the scrivener and a witness to the will to come to the house on the

day the will was executed. This argument is based on G. S. 1941 Supp. 59-605. The section reads as follows:

"If it shall appear that any will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall affirmatively appear that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

The evidence of the appellant as well as that of the appellee was to the effect that when the witnesses to this will and the scrivener arrived at the home of the testator and the scrivener was advised that testator wished to leave 75 percent of the estate to Ruth, it was suggested that she leave the room and she did so. The will was written by the scrivener with suggestions from time to time from the testator. Appellant refers to the fact that Ruth was asked from time to time to furnish some descriptions of the real estate and to furnish the names of some of the nieces and nephews, but that does not establish that the will was either written or prepared by her. Furthermore, the uncontradicted evidence disclosed that the testator knew and approved the contents of the will before he signed it.

Defendant next argues that the trial court erred in refusing to admit certain evidence offered by the appellant. There was no motion for a new trial in this case—hence, the evidence which appellant argues it was error for the court to reject was not furnished the court in the form of an affidavit at the hearing of the motion for a new trial. In view of that situation we cannot review the question of whether or not the evidence should have been admitted.

Appellant next argues that the court erred in admitting incompetent evidence over the objection of the appellant. This argument relates to evidence of the witnesses to the will as to the mental competency of testator. It is questionable whether or not this error is reviewable by this court in view of the fact that no motion for a new trial was filed. However, we have considered the argument that these witnesses were not competent to testify as to the mental capacity of the testator because they had not known him long enough and had not sufficient opportunity to ascertain whether or not he was of sound mind. We have examined the record in this case and have concluded that all of these witnesses who testified as to the mental capacity of the testator had had sufficient opportunity so that they were competent to testify in this respect.

The next argument of appellant is that the court erred in sustain-

ing the demurrer of the appellee to the evidence of appellant. When the appellant had finished the introduction of his evidence on the question of whether this was the last will of the decedent, whether he was incompetent to make a will, and whether there had been undue influence practiced upon him, and whether the will had been written by the principal beneficiary, the appellee who was offering the will for probate demurred to it on the ground that the appellant had failed to show that the testator was not of sound mind when the will was executed; that he had failed to show any undue influence by Ruth Peirano, as alleged, and had not proven the invalidity of the will and had failed to overcome the presumption arising as to the validity of the will after prima facie showing that the instrument was duly signed and attested by the testator in the presence of witnesses and as to the prima facie showing as to the validity of the will. See 2 Bartlett, Kansas Probate Law and Practice, 343.

The question to be determined after a trial court has held that the proponents of the will have made a prima facie showing as to its validity is whether the evidence of the contestants was sufficient to overcome that prima facie case. This is a question of fact no different than any other question of fact.

The court then made a statement that it was not necessary to weigh the evidence and that the question was whether there had been any testimony offered which broke down the prima facie case made by the proponent of the will, and announced that the demurrer to the evidence would be sustained. The court further stated at that time that judgment would be rendered to the effect that all issues were found in favor of the appellees. When the journal entry was made the court found that the demurrer should be sustained, and also found that the decedent died testate; that the will was duly executed and attested according to law; that the decedent was a person of sound mind and alert at the time of the execution of the will, of full age and under no restraint; that the will was valid and genuine and the last will of testator.

The above orders of the court had the effect of a finding of fact on the issues in favor of the proponents of the will. Moreover, we have examined this record and are unable to find any substantial evidence that the testator was not of sound mind, did not duly execute the will, was under any undue influence or that the principal beneficiary prepared the will.

The judgment of the trial court is affirmed.

Hoch, J., not participating.