Argued March 6, affirmed March 14, 1951

# IN THE MATTER OF THE ESTATE OF
## ARTHUR S. DETSCH, Deceased
## DETSCH v. DETSCH, Admtr'x

229 P. 2d 264

*Alton John Bassett,* of Portland, argued the cause and filed briefs for contestant-appellant.

*O. C. Roehr,* of Portland, argued the cause for respondent. With him on the brief was C. C. M. Peterson, of Portland.

Before Brand, Chief Justice, and Hay, Rossman, Warner and Tooze, Justices.

WARNER, J.

This is a proceeding to contest the will of Arthur S. Detsch, deceased, instituted by his son, Norton Detsch, against Edna E. Detsch, the decedent's widow and executrix. From a decree sustaining the will, the contestant appeals.

Arthur S. Detsch was about fifty-seven years of age when he died in Seattle, Washington, on the 24th day of March, 1948. He left surviving him as his sole heirs at law his wife, Edna E. Detsch, and his adult son, Norton Detsch. Norton is a son by a previous marriage which terminated by divorce in 1927. Norton, who then was about three years old, was committed to the custody of his mother with whom he has lived in

Portland, Oregon, all of his life. After the divorce in 1927, Norton saw his father only occasionally and usually at times when the decedent was in Portland on business errands or on infrequent visits to his father's home in Seattle. A friendly but not too close relationship existed between the father and son.

The decedent and his widow were married some time in 1934. She is an educated woman of the same age as her husband who took an active part in his business. Seattle was decedent's home and principal place from whence he operated his business as a manufacturer's agent. From early years of modest beginning, the business grew by dint of decedent's industry, application and shrewdness to a point where he was able, in 1940, to establish and thereafter maintain a branch office in Portland.

In March, 1947, Mr. Detsch experienced a serious heart attack. From that time to the date of his death, he was under the more or less constant observation and care of his physicians and subjected to the urgent necessity of conserving his energies and avoiding overexertion.

While on one of his trips to Portland during that period, he executed his last will and testament on the 27th day of August, 1947, in the office of Keith A. Caldwell, a lawyer in that city who had long known Mr. Detsch as a friend and who had served him as attorney and a business adviser. The execution of the will was witnessed by Mr. Caldwell and his secretary.

This will left the sum of $500.00 to a Mrs. Parsons, who had for many years been the testator's faithful secretary, and the sum of $500.00 to his son, Norton. The entire residue of testator's estate was left to his

wife, Edna. Norton was also a beneficiary under a policy of life insurance to the extent of $600.00.

After the testator's death, which resulted from his heart ailment, the will of August, 1947, was admitted to probate on the 29th day of March, 1948, in the circuit court for Multnomah county and the widow at that time was appointed executrix of her husband's estate. In September of that year, Norton Detsch petitioned that the will be declared invalid, null and void. He assigned two reasons therefor: (1) decedent's alleged mental incapacity resulting from the serious character of his last illness and which, Norton stated, impaired his normal mental faculties and functions; and (2) undue influence from the alleged coercion and artifices practiced by Edna Detsch. Upon the hearing of this contest, a decree was entered dismissing the petition of Norton Detsch and declaring the will of August 27, 1947, to be valid and subsisting, from which the contestant son appeals.

The contestant at the time of trial abandoned his claim that the testator was mentally incompetent. He now urges as a sole ground for setting the instrument aside that it was induced by the undue influence of testator's wife.

■ We have recently said speaking through Mr. Justice Tooze in *Trombly et al. v. McKenney et al.,* 191 Or. 90: "The last will and testament of a deceased person is an instrument of such great solemnity that it will never be set aside unless the evidence is convincing that it should be."

■■ The burden of proving undue influence is usually upon the party who asserts it. *Trombly et al. v. McKenney et al.,* supra; *Allen v. Breding,* 181 Or. 332, 341, 181 P. 2d 783; *In re Lobb's Will,* 173 Or. 414, 432,

145 P. 2d 808; *In re Rupert's Estate,* 152 Or. 649, 677, 54 P. 2d 274; *In re Knutson's Will,* 149 Or. 467, 486, 41 P. 2d 793; *In re Estate of Riggs,* 120 Or. 38, 47, 241 P. 70, 250 P. 753. The existence of a confidential relation between testator and beneficiary, however, coupled with proof that the beneficiary participated actively in the preparation or execution of the will casts upon the beneficiary the burden of disproving undue influence. *Trombly et al v. McKenney et al.,* supra; *Allen v. Breding,* supra. This burden never shifts. *In re Southman's Estate,* 178 Or. 462, 482, 168 P. 2d 572; *In re Brown's Estate,* 165 Or. 575, 584, 108 P. 2d 775.

Contestant's case for undue influence rests upon two propositions: first, that testator's wife, because of that relationship, may be presumed to have exercised such a meretricious influence upon her husband; and, second, that the wife was prompted by her knowledge of decedent's departure from the ways of marital rectitude to vindictively influence the generous provision in her behalf and as a species of involuntary atonement for the testator's alleged wrongdoing. Contestant refers to this as testator's "buying his peace" on terms dictated by his wife. The first proposition is without legal merit. The second one fails for want of substance and proven fact.

■■ There is no rule of law which holds or infers that a power or influence born of a confidential relation such as husband and wife has been ipso facto wrongly employed to compel a testator to make a provision in the other's favor contrary to decedent's free will and volition. In *Turner's Will,* 51 Or. 1, 8, 93 P. 461, this court said: "A mere confidential relation existing between the testator and a beneficiary under a will,

or the opportunity of such beneficiary to exercise undue influence over the testator, is not enough to avoid a will." In 68 C. J., Wills, 752, § 442, we find:

> "The influence of a * * * spouse to make a will in [his or her] favor, in the absence of a showing that it was improperly exercised, does not vitiate the will, even though there may be proof that such a provision would not have been made but for such importunity. The mere fact that a wife guides or even dominates her husband, or has acquired an ascendancy over him, does not render his will made in her favor invalid.".

We know of no better statement of a wife's normal and proper influence than that so pertinently made by Mr. Chief Justice Campbell in *Latham v. Udell*, 38 Mich. 238, where he said:

> "A faithful wife ought to have very great influence over her husband, and it is one of the necessary results of proper marriage relations. It would be monstrous to deny to a woman who is generally an important agent in building up domestic prosperity, the right to express her wishes concerning its disposal."

The second proposition relied upon by the contestant is both socially cynical and legally specious. It is purely speculative in character and underwritten with postulates which challenge our credulity. Here we are presented with the astounding picture of a son who blows hot and cold in his characterization of his father. One moment we find him exclaiming that the will is unnatural because of the blood ties and close relations which he claims existed between him and his father. The next moment he reveals the anemic content of those bonds by unabashedly picturing his father to the court in the role of a romantic Don Juan. With the help of his mother he goes back to times long before

Norton's birth or his father's marriage to Edna Detsch to construct a history of his deceased parent's alleged marital infidelities. Their testimony rests upon much hearsay and little factual substance but nevertheless presents his father as one who was unfaithful up to a time shortly before his death. We are told that his widow had knowledge of the father's latest departure from the highway of marital rectitude and because of this fact, we are urged to assume that Edna Detsch, with motives of revenge, vindictively availed herself of this information to coerce and intimidate her husband to write his will in her favor in the manner in which he did. To give such inference the character of a factual happening, the contestant in his argument calls to our attention the cynical aphorism that "Hell hath no fury like a woman scorned," as a sort of final proof of his false hypothesis that every woman upon discovery of her husband's meanderings is moved to avenge her injured pride by the imposition of mercenary demands enforced by coercive threats to dissolve the marriage relationship unless the wayward spouse accedes to her will. Contestant offers not one scintilla of proof to demonstrate that the reactions which he suspects in Mrs. Detsch were conjured in the breast of decedent's wife or if they ever existed in fact that they became a threat to the continuity of the marriage or an excuse for increasing her share in her husband's estate. Mere suspicion of undue influence is not sufficient. *Rice v. Rice,* 95 Or. 559, 563, 188 P. 181; *In re Sturtevant's Estate,* supra at page 300; *Turner's Will,* supra at page 8.

The contestant stands before us in an anomalous position. On the one hand, he cries out against his stepmother, claiming that she has wrongfully employed

her knowledge of her husband's marital digressions to wreak a secret and unconscionable advantage for herself. Yet, on the other, he exhibits no compunction in publicly despoiling his father's good name in order to enhance his own fortunes. We are persuaded that any want of character, as exposed by this unhappy proceeding, lies with the son and not with the widow. Although we are not called upon in the absence of fact to draw any inferences from the matter presented by the contestant concerning his father's alleged moral digressions, yet, if inferences were in order, more persuasive ones would accrue to the advantage of Mrs. Detsch. Assuming that Arthur Detsch was the kind of man that his son pictures him to be, it does not follow that his or, indeed, any other wife in the same situation would be necessarily unnaturally motivated as Norton Detsch would have us believe that his stepmother was motivated in this matter. The heartaches created by a spouse's infidelity are not always met in the manner he suggests. His callous thesis ignores the existence of understanding forgiveness when confronted with honest repentance, especially when these virtues are fortified by a remembrance of marriage vows and religious precepts, all urging for the maintenance rather than the destruction of the marital bond. Happily for the continuity of our present society, the great majority of married persons are wisely and temperately so persuaded when faced with disquieting disclosures of departures from the code adjuring fidelity. We have no occasion to doubt that the Detschs were marital companions of that kind nor that Mr. Detsch, if alive, could successfully meet and satisfactorily explain away the slanderous imputations of his son and first wife. In lieu of substantial evidence, we cannot

accept suspicion, innuendo, insinuation or speculation to support the charge of undue influence here made. *Trombly et al. v. McKenney et al.,* supra.

Elsewhere in the record we find ample and convincing proof that Mrs. Detsch was not guilty of exercising undue influence upon her husband when he executed his last will and testament. From that source she appears to us as a devoted helpmate in the home and in her husband's business devoid of the species of furtiveness and avariciousness imputed to her by contestant. We learn through contestant's witnesses that decedent was a shrewd and sharp businessman who successfully carried forward his business close until the day of his death and that his will was executed in Portland without the then knowledge and without the presence of his wife, who at the time was in Seattle. Indeed, she had no knowledge concerning the provision made for her until after Mr. Detsch's death. Moreover, the evidence is that notwithstanding any breaches between Mr. Detsch and her, if in fact there ever were any serious difficulties, she was in his last days his devoted companion and he was her devoted and appreciative husband. This conclusion is supported by the disinterested testimony of Doctor Averly M. Nelson, a Seattle heart specialist who attended him from the time of his first serious heart attack in March, 1947, until some time in September of that year. Doctor Nelson in his deposition stated:

"Throughout Arthur's illness I admired and respected his wife for the excellent cooperation she gave us. It was necessary to place him on diets which were limited in salt, which were unpleasant, but certainly Mrs. Detsch cooperated thoroughly in this matter, and even went on such diets with him herself. Arthur mentioned to me many times how

much he appreciated his wife's help in this matter. I am sure that they had considerable devotion for each other and which was returned by the other party.

"Q. Was there anything about this trip to Philadelphia that you talked about that would have a bearing upon his physical condition?

"A. That was the first time that Arthur had mentioned to me what a gem he thought his wife was. I remember it occurring, because he was so enthusiatic about the whole thing."

The contestant says the will is not a natural one because it shows no real consideration for him as the testator's son. Both the son and testator's wife are natural objects of his bounty within the definition of such term. *In re Beer's Estate,* 190 Or. 15, 222 P. 2d 1005, 1006; *In re Walther's Estate,* 177 Or. 382, 397, 163 P. 2d 285. It cannot be said, however, that the instant will was unnatural merely because it preferred Edna Detsch to Norton Detsch. She was close to sixty when Mr. Detsch made his will and had been a most helpful factor in accumulating what he had. His son was educated and able to make his own way as testator had done. He had been warned by his physician that he might go at any time. To provide for his wife in preference to his son under all the known circumstances is but natural and normal.

■ There is no merit to the claim that one, as decedent's next of kin, has a preferred testamentary status insuring to him the right to receive all or any part of testator's estate. Such a contention was long ago set at rest by Mr. Justice WOLVERTON in *Holman's Will,* 42 Or. 345, 70 P. 908, where he says at page 356:

"The right of one's absolute domination over his property is sacred and inviolable, so that he may

do what he will with his own, if it is not to the injury of another. He may bestow it whithersoever he will and upon whomsoever he pleases, and this without regard to natural or legitimate claims upon his bounty; and if there exists no defect of donative capacity, whereby his individual will or judgment does not have intelligent and conscious play in the bestowal, or undue influence or fraud, whereby an unconscionable advantage may be taken of him through the wicked designs of another, the law will give effect to the disposition; and the right to dispose of one's property by will, and bestow it upon whomsoever he likes, is a most valuable incident to ownership, and does not depend upon its judicious use: In re Kaufman's Estate, 117 Cal. 288 (49 Pac. 192, 59 Am. St. Rep. 179); In re McDevitt, 95 Cal. 17 (30 Pac. 101); Cramer v. Craumbaugh, 3 Md. 491. And this court has held, in effect, that 'while it seems harsh and cruel that a parent should disinherit one of his children and devise his property to others, or cut them all off and devise it to strangers, from some unworthy motive, yet so long as that motive, whether from pride or aversion or spite or prejudice, is not resolvable into mental perversion, no court can interfere': Potter v. Jones, 20 Or. 239 (25 Pac. 769, 12 L. R. A. 161). To the same purpose is Hubbard v. Hubbard, 7 Or. 42; Clark's Heirs v. Ellis, 9 Or. 128; Chrisman v. Chrisman, 16 Or. 127 (18 Pac. 6); Darst's Will, 34 Or. 58 (54 Pac. 947)."

Also see *Re Phillips' Will,* 107 Or. 612, 213 P. 627, wherein the testatrix ignored the claims of her near relatives and disposed of her property in favor of a church and other charities.

The decree of the lower court is affirmed.