No. 53,228

In the matter of the estate of Owen R. Robinson, Deceased. SALLY L. ROBINSON, *Appellant,* v. R. MICHAEL JENNINGS and ANNE IRVING, *Appellees.*

(644 P.2d 420)

Opinion filed May 8, 1982.

*Karl W. Friedel,* of Martin, Cooper, Churchill, Friedel & Overman, of Wichita, argued the cause, and *O. J. Connell,* of Connell & Connell, of El Dorado, was with him on the brief for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Robert L. Howard* and *Gary L. Ayers,* of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal from an order of the district court denying admission of a will to probate on the basis of undue influence in violation of K.S.A. 59-605. The decedent is Owen R.

Robinson. The adversaries in this case are Owen's widow, Sally L. Robinson, and Owen's nephew and niece, R. Michael Jennings and Anne Irving. The trial court, in its order denying admission of the will to probate, made extensive findings of fact and conclusions of law.

The facts in the case are not really in dispute and are essentially as follows: The decedent, Owen R. Robinson, died on June 26, 1978, in Wichita at the age of 71 years. He was survived by his widow, Sally, his only heir at law. The parties had no children. Owen was a retired dentist and rancher whose major interest at the time of his death was his one-half interest in the Santa Robin Ranch in Butler County. Owen and Sally were married September 2, 1930. They began married life in Kansas City and then after one year moved to Graham County. In 1935 they moved to Hays were Owen went to college. Owen entered dental school in Kansas City in 1940 and graduated in 1944. Sally worked while Owen attended college and dental school. Following dental college, Owen practiced dentistry in Kansas City. They moved to Garden City and, thereafter, they moved 38 times during their married life and finally settled at the ranch in Butler County.

Owen had a nephew and niece, R. Michael Jennings and Anne Jennings Irving, with whom Owen had a close personal relationship. Sally had three nephews, Richard Schleufer, Douglas Schleufer, and Michael R. Weigel, who visited the couple from time to time. Owen and Sally worked hard and got along fairly well until Owen developed a drinking problem around 1955. In 1963, the couple underwent a trial separation and divided their property in half. They reconciled on several occasions, but Sally finally left because Owen in his drinking would become belligerent, violent, and abusive towards her. The couple were formally divorced on September 2, 1965. On September 3, 1965, Owen executed a will leaving all of his property to R. Michael Jennings and Anne Jennings Irving.

The parties reconciled within a year and were married in Oklahoma in October of 1966. From that time on until Owen's death, the marriage continued. When the parties were remarried in 1966, Sally still owned about ¾ of her property remaining from the property division, while Owen had one-fourth left. They pooled their resources and began purchasing real estate. They bought a house, then a ranch, and finally the Santa Robin Ranch.

The title to the Santa Robin Ranch was held by Sally and Owen equally as joint tenants with right of survivorship.

Owen did not drink for several years after his remarriage to Sally, but then he began drinking again and trouble ensued. Owen was treated for alcoholism at Valley Hope. On February 20, 1976, Sally placed Owen in the St. Joseph Alcoholic Treatment Unit and threatened to get a court order to keep him there. Owen was released from the treatment unit in the spring of 1976. He did not want to get a divorce from Sally, but was fearful that Sally was considering a divorce. Dr. Robinson, in addition to being a dentist, raised cattle. Sally kept the records as well as the books on the ranch, while Owen did all of the outside work. Sally also helped in the pastures and fields.

Although not specifically stated in the findings of fact of the trial court, the evidence was undisputed that Dale Cooper of Wichita was Owen's and Sally's attorney from 1970 on. Cooper's office records showed that he had conferences with Owen alone, on at least 15 separate occasions commencing in 1970 until September of 1975. In 1974, Dale Cooper represented Owen in a DWI case in Harvey County and a collateral motor vehicle license revocation hearing. Cooper's records show that he represented Owen in a court proceeding in September of 1975. Cooper was clearly the family attorney for both Owen and Sally during the 1970's. According to Dale Cooper, he discussed with Owen and Sally the estate tax benefits which would result from severing the joint tenancy in the Santa Robin Ranch. Cooper discussed with Owen the disposition of his estate on numerous occasions. In discussing the disposition of Owen's estate, Owen told Cooper on a number of occasions that he wanted to leave everything to Sally outright with no restrictions. There never was a discussion, however, in regard to contingent beneficiaries.

One of Owen's personal and business friends was Richard Smethers, a farm and ranch appraiser and investment manager for Prudential Insurance Company. In the spring of 1966, Smethers appraised some land for Owen. On three occasions he made farm and ranch loans to the Robinsons. Smethers would also locate buyers for Owen's cattle. Smethers testified, and the court found, that his relationship with Owen Robinson started out on a business basis and grew and developed into a personal friendship. They were involved in various projects together, and Smethers

would see Owen at his home several times a month. Smethers would act as a business adviser to Owen and Sally. Smethers testified that Owen began talking about a will about two years before Owen suffered a severe stroke on August 16, 1976. One morning in June, 1976, Owen Robinson called Smethers, wanting to see him. Smethers went to the ranch where Owen wanted to talk about a will and an estate plan and stated, "I just don't think I'm going to be around very much longer." At that time Owen was very concerned about estate taxes and about protecting the operating entity of the Santa Robin Ranch. Owen wanted it to remain intact and for his wife Sally to be taken care of. Owen also indicated that he held his property in joint tenancy with his wife Sally and that she had contributed more than he had. Owen and Smethers then discussed the tax advantages of severing the title to the ranch by the giving of cross-deeds and wills. Smethers advised Owen to discuss it with a lawyer. He also told Robinson that beneficiaries would have to be designated who would take over after the doctor and his wife were gone but none were discussed at that time.

Three or four days after Owen had his stroke on August 16, 1976, Smethers visited him at Wesley Hospital in Wichita. On September 18 or 19, 1976, Smethers discussed with Owen the drawing of a power of attorney that would give Sally the right to sell cattle and manage the ranch. Smethers also asked Owen if he wished to go ahead with the will and estate plan they had discussed previously. Owen indicated that he wanted to go ahead with it. Sally was present during this discussion.

On Monday, September 20, 1976, Smethers called attorney Dale Cooper. Smethers told Cooper that they needed to get together to draft the will and sever the joint tenancy. It is important to note that *Smethers* made the first call to Dale Cooper and this initial call was confirmed by both Smethers and Cooper in their testimony. Sally also called Cooper for the purpose of setting up an appointment to discuss the drafting of the will, the power of attorney, and the severance of the joint tenancy. A conference was then held in which Smethers, Cooper, and Sally discussed the power of attorney, the severance of the joint tenancy, and the will, insofar as it was to leave all the estate to Sally.

Dale Cooper testified that during the 1970's he had several discussions with Owen and Sally about severing the joint tenancy

and the creation of a tenancy in common and its tax advantages. Cooper knew that Owen wanted Sally to have the entire interest in the estate should Owen die first, rather than just a beneficial interest. Cooper testified that Owen was not in favor of trusts. Smethers told Cooper that Owen wanted the will prepared in accordance with their previous discussions. Dale Cooper testified categorically that there was no question in his mind where Owen wanted his total estate to go on his death and Sally wanted her total estate to go on her death. Contingent remainders were not discussed because information about Sally's contributions was not forthcoming.

On September 20, Cooper, Smethers, and Sally met in Cooper's office where the power of attorney, deeds severing the joint tenancy, and the will were prepared by Cooper. The controversy really arose in this case because Sally brought to Cooper a list of her three nephews, stating they were to be the contingent beneficiaries. They discussed the desirability of getting the will signed because of Owen's stroke.

On September 22, 1976, Dale Cooper and his secretary brought the power of attorney, the will, and the deeds to Owen Robinson's room in the hospital in Wichita. Smethers and Cooper drove to the hospital. When they got there, they found Owen and Sally, and Owen's friend, Virgil Mattox. Sally had told Owen that Cooper was coming with some papers for him to sign. The court found that Smethers told Owen that Cooper had brought the power of attorney and cross-deeds and that the will had been prepared the way he had wanted it. At that point Cooper stepped up and explained the power of attorney, but did not read it. Cooper also explained the deeds and both read and explained the will. According to Cooper, in the hospital on September 22, 1976, he explained to Owen that everything would go to Sally if she survived. The trial court found that Cooper explained to Owen Robinson the deeds and showed him the deeds that would sever the joint tenancy. After explaining the deeds and after reading and explaining the will, Cooper asked Owen Robinson if that was what he wanted to do. Although the doctor could not speak, he nodded up and down in an affirmative fashion and smiled.

There was a factual controversy at the trial as to whether Owen Robinson understood what he signed. The trial court resolved this controversy by concluding from the testimony of the wit-

nesses that, "in the absence of undue influence or other illegality, Dr. Owen Robinson had testamentary capacity sufficient to make a will on September 22, 1976."

From the record, it is a fair conclusion that Owen and Sally were not in agreement as to where their property should go in the event of the death of the survivor. The evidence presented by Michael Jennings and Anne Irving indicated that Owen wanted the property to go to them after Sally's death. Sally, on the other hand, wanted the property to go to her nephews. The naming of Sally's nephews as contingent beneficiaries in Owen's will was a matter which had not been discussed by Cooper and Smethers with Owen prior to the execution of the will.

Owen died on June 26, 1978, just short of two years after the will was executed. Sally employed Dale Cooper as the attorney to file the petition to probate the will dated September 22, 1976. Michael Jennings and Anne Irving opposed the admission of the will to probate on the basis of undue influence, contending that the will was executed in violation of K.S.A. 59-605, which provides as follows:

"59-605. **Preparation of will by principal beneficiary.** If it shall appear that any will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall affirmatively appear that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

The forerunner of K.S.A. 59-605 was R.S. 1923, 22-214 which was first enacted in 1905. Since that time, this court has had a number of cases which have considered the application of the statute to specific factual situations. It would be helpful to consider in a general way the approach this court has taken in the past in considering the statute. It is clear from the various decisions that the statute is not to be applied in a technical way to defeat a will, where to do so would defeat the clear intention of the testator. One of our first cases involving this statute was *Sellards v. Kirby*, 82 Kan. 291, 108 Pac. 73 (1910), where the will was actually written by the daughter of the testator and named her as executrix and principal beneficiary under the will. In *Sellards* on page 296 of the opinion, the court states:

"The real question in each case is whether all the circumstances so far as shown are such as to lead the court to believe that in fact the will does not actually express the voluntary purpose of the testator."

Stated in another way, it is the obligation of the court to uphold the will, if by doing so it can carry out the true intent of the maker of the instrument.

K.S.A. 59-605 is a statute which legislatively reinforces the common-law doctrine of undue influence, which, in the absence of a statute, permits a court to deny admission of a will to probate under certain circumstances. *In re Estate of Ziegelmeier,* 224 Kan. 617, 622, 585 P.2d 974 (1978), defined undue influence as follows:

> "Generally, undue influence or fraud, to invalidate a will, must amount to coercion, compulsion or constraint which destroys the testator's free agency, and by overcoming his power of resistance obliges him to adopt the will of another instead of exercising his own, and it must be brought to bear directly on the testamentary act. . . . Of course, the burden of proof is on the party claiming undue influence. . . . Legitimate influence is not improper; that is, influence obtained by kindness and affection will not be regarded as undue."

In considering R.S. 1923, 22-214, this court in *Flintjer v. Rehm,* 120 Kan. 13, 241 Pac. 1087 (1926), noted:

> "It will be observed that the statute applies only (1) when the will is written or prepared by the sole or principal beneficiary; (2) who is the confidential agent or legal adviser, or who occupies some other position of confidence or trust to the testator. When these conditions exist, the will shall not be held to be valid unless two things shall be affirmatively shown: (1) That the testator read or knew the contents of such will, and (2) had independent advice with reference thereto." p. 15.

Thus, in order for K.S.A. 59-605 to apply, the opponent of the will must show that the two conditions exist, and if they do exist, the will is to be held invalid unless the proponent of the will shows that the testator read or knew the contents of the will and had independent advice with reference thereto. If the will was not written or prepared by the sole or principal beneficiary, who at the time was the legal adviser or confidential agent of the testator or who occupied at that time any other position of confidence or trust to such testator, then the question of independent advice becomes immaterial. *In re Estate of Horton,* 154 Kan. 269, 274, 118 P.2d 527 (1941); *In re Estate of Schippel,* 169 Kan. 151, 218 P.2d 192 (1950).

The district court held that the conditions under the statute had been satisfied and found that the proponents of the will had failed to show that the testator read or knew the contents of the will and

had independent advice with reference thereto. We have considered the record in this case and have concluded that the trial court was in error and that under the undisputed evidence this was not a proper case for the application of K.S.A. 59-605.

First, we find that under the undisputed factual circumstances, Sally Robinson was not the confidential agent or legal adviser of the testator, nor did she occupy a position of confidence or trust to the testator as contemplated by the statute. She was simply his wife. The trial court, in concluding that Sally occupied a position of confidence or trust to the testator, relied on the following language in *Woodworth v. Gideon,* 136 Kan. 116, 12 P.2d 722 (1932):

"It is true that a confidential relation exists between husband and wife. It is proper that such a relation should exist. The fact that it does exist is not evidence of fraud or undue influence." p. 118.

The trouble in this case arose because the trial court did not take into consideration other Kansas cases where the meaning of the phrase "confidential relationship" under the statute is more closely examined and determined. In *In re Estate of Horton,* 154 Kan. 269, the court stated that our statute (59-605) contemplates *something more* than a mere confidential relationship. *Klose v. Collins,* 137 Kan. 321, 20 P.2d 494 (1933), holds that the fact that the two principal beneficiaries advised the testator about matters such as religious or charitable contributions, the purchase of clothing and furniture, and helped her look after the building of a new dwelling did not imply a confidential relationship under the statute and that the statute was not applicable since there was nothing to show that they occupied a *fiduciary* relation with the testatrix.

In *In re Estate of Schippel,* 169 Kan. 151, the will was prepared by an attorney at the request of Jennerson, the principal beneficiary, who came to live in the home of the testator as a small boy and continued to work with the testator in a close relationship in farming operations. It was held that Jennerson was not the confidential agent of nor did he occupy a position of confidence or trust to the testator within the meaning of the statute.

In *Warwick v. Zimmerman,* 126 Kan. 619, 270 Pac. 612 (1928), it was held that lawful influence, such as that arising from legitimate family or social relations, must be allowed to produce its natural results, even in influencing last wills. However great

the influence thus generated may be, it has no taint of unlawfulness. In *Jernberg v. Evangelical Lutheran Home for the Aged,* 156 Kan. 167, 174, 131 P.2d 691 (1942), the court, in holding the statute was not applicable, noted that the relation between the beneficiary and the testator was more like that of a parent and child or *husband and wife,* which, without more, did not create a situation in which independent advice is requisite to the sustaining of a gift. The court cited *Carmen v. Kight,* 85 Kan. 18, 116 Pac. 231 (1911), and *Woodworth v. Gideon,* 136 Kan. 116.

From these cases, we have concluded that the mere relationship of husband and wife is not alone sufficient to create the kind of relationship required by K.S.A. 59-605. The courts in other jurisdictions, in construing similar statutes, hold that a relationship other than that of husband and wife must be established to create the relationship required for application of the statute. See, for example, *In re Estate of Thompson,* 153 Neb. 375, 44 N.W.2d 814 (1950), where it was held that the mere opportunity of the wife, when living happily with the husband, to influence the execution of the will favorable to herself is not alone sufficient to warrant submission to the jury of the question of undue influence. Likewise, in *Detsch v. Detsch, Administratrix,* 191 Or. 161, 229 P.2d 264 (1951), the court stated that a faithful wife ought to have great influence over her husband, and it is one of the necessary results of proper marriage relations, and that it would be monstrous to deny to a woman who is generally an important agent in building up domestic prosperity the right to express her wishes concerning its disposal. In Atkinson, Law of Wills § 101, p. 550 (2nd ed. 1953), the author states that the presumption of undue influence does not ordinarily apply in the case of the spouse procuring the instrument.

From all of the factual circumstances present in this case which made it clear that the testator, Owen Robinson, was a man of strong will who was not easily influenced, who managed his affairs, and whom the court found to have testamentary capacity at the time the will was signed, we have concluded that K.S.A. 59-605 should not have been applied, because there was no adequate showing that Owen's wife, Sally Robinson, was Owen's confidential adviser as contemplated by the statute.

We have also concluded that the trial court erred in holding that the will of September 22, 1976, was written or prepared by Sally

Robinson within the meaning of K.S.A. 59-605. The evidence was undisputed in this case that Dale Cooper prepared and wrote the will and that he had served as attorney for Owen Robinson in the conduct of his personal and business affairs for a period of at least six years prior to Owen's death. As noted above, Cooper's office records established that he had had conferences with Owen alone on 15 separate occasions between September 1970, and September 1975, and that he had represented Owen Robinson in court in 1974 and 1975. The evidence was undisputed that Cooper had discussed with Owen Robinson the disposition of his estate on numerous occasions and that the preparation of the will was but one part of a general plan to change the ownership of the Santa Robin Ranch from one in joint tenancy with right of survivorship to a tenancy in common.

Furthermore, the evidence was undisputed that Richard Smethers also discussed the ownership of the property with Owen Robinson and that it was Smethers, not Sally, who first called attorney Cooper about the need to draft the power of attorney, deeds, and will. Under these circumstances, we do not see how it could reasonably be contended or that the court could find that Sally Robinson wrote or prepared the will within the meaning of K.S.A. 59-605. The mere fact that Sally Robinson furnished the names of her nephews to be included as contingent beneficiaries does not establish that the will was either written or prepared by her. In this regard see *In re Estate of Peirano,* 155 Kan. 48, 53, 122 P.2d 772 (1942), and also *In re Estate of Amey,* 174 Kan. 64, 254 P.2d 314 (1953). Under all the circumstances, we hold that there is no substantial competent evidence to support the finding of the trial court that Sally Robinson wrote or prepared the will in question as contemplated by K.S.A. 59-605.

Having concluded that K.S.A. 59-605 is not applicable under the undisputed factual circumstances in this case, we turn to the question whether the evidence was sufficient to show fraud or undue influence so as to justify the trial court's denial of admission of the will to probate. Where the factual circumstances are such that K.S.A. 59-605 does not apply, the common-law rules with reference to undue influence or duress become applicable. *Woodworth v. Gideon,* 136 Kan. 116. Under the facts in this case, it is probable that through Sally's efforts her nephews were named as contingent beneficiaries in the will rather than Owen's

nephew and niece, R. Michael Jennings and Anne Irving. If Sally had not survived Owen, the provision for contingent beneficiaries would then have become operable to leave the estate to Sally's nephews. If that had occurred, a *bona fide* controversy would have existed between the nephew and niece of Owen Robinson and the nephews of Sally Robinson as to whether or not the admission of the will to probate should be denied because of Sally's fraud. We find it unnecessary in this case, however, to determine that hypothetical controversy.

Since Sally survived Owen Robinson, she would be entitled to take the property as the sole beneficiary under Owen's will, if that was Owen's actual intention. The evidence in this case is clear and undisputed that before the deeds and the will were executed, Sally Robinson and Owen Robinson owned their Santa Robin Ranch as joint tenants with right of survivorship. On Owen's death, Sally would have acquired title to the entire property as the surviving joint tenant. It was actually not in her self-interest to change the ownership of the Santa Robin Ranch from a joint tenancy to a tenancy in common. She had no sinister reason whatsoever to use undue influence to compel Owen to execute a will leaving the property to her. Furthermore, the evidence was absolutely undisputed from the testimony of Dale Cooper and Richard Smethers, that Owen Robinson desired the execution of deeds to change the ownership of the Santa Robin Ranch from a joint tenancy to a tenancy in common and to have a new will executed to give all of his property to Sally upon his death. Under these circumstances, the general rule is that parts of a will may be held valid, notwithstanding other parts are invalid on account of undue influence or fraud exercised upon the testator, provided the parts so affected are separable so that the invalid provisions can be deleted without defeating the will of the testator. See 79 Am. Jur. 2d, Wills § 397, p. 555, and the annotation at 64 A.L.R.3d 261, and the many cases cited therein.

The general rule has been recognized and followed in Kansas. See *Holmes v. Campbell College,* 87 Kan. 597, 125 Pac. 25 (1912), where it is stated at p. 599: "A portion of a will may be refused probate because of undue influence, while the remainder is admitted." The rule of severability is also followed in *Fennell v. Fennell,* 80 Kan. 730, 106 Pac. 1038 (1909), and more recently in *Harvey v. Harvey,* 215 Kan. 472, 524 P.2d 1187 (1974), both cases

holding that where one provision of a will is invalid for any reason and the testamentary scheme of the testatrix can be determined and carried out regardless of the void provision, that provision will be severed and stricken out and the testamentary plan given effect. Applying this general rule to the facts in the present case, we hold that the trial court, instead of holding the entire will invalid and refusing to admit it into probate, should have stricken the provision in the will pertaining to contingent beneficiaries and upheld that portion of the will awarding Owen Robinson's entire estate to Sally Robinson in the event she survived him.

The judgment of the district court is reversed and remanded to the trial court with directions to uphold and admit to probate the will of Owen Robinson dated September 22, 1976, deleting therefrom only that portion pertaining to contingent beneficiaries discussed above.